2002 OK 19

**FRATERNAL ORDER OF POLICE, LODGE 108, Kenneth Bridgeman, and Nathan Fountain, Plaintiffs/Appellants,**

v.

**CITY OF ARDMORE and the Public Employees Relations Board, An agency of the State of Oklahoma, Defendants/Appellees.**

No. 95,131.

Supreme Court of Oklahoma.

March 19, 2002.

James R. Moore, Oklahoma City, OK, for Appellants.

Ted J. Pasley, Ardmore, OK, for Appellee City of Ardmore.

Gretchen Zumwalt, Asst. Atty. General, Oklahoma City, OK, for Appellee Public Employees Relations Board.[1]

OPALA, J.

¶ 1 Two dispositive issues are presented on certiorari: [1] Are probationary police officers to be considered "permanent members" of the police department for invocation of grievance arbitration rights under the terms of the Fire and Police Arbitration Act (FPAA)[2]? and [2] Does the PERB have statutory authority to determine the membership status of a collective bargaining unit? We answer the first question in the negative and the second in the affirmative.

I

**THE ANATOMY OF LITIGATION**

¶ 2 All the facts in this controversy were submitted to the PERB and to the district court by stipulation. FOP and the city entered into a collective bargaining agreement effective 1 July 1997 through 30 June 1998. The agreement contained, in Article II, the following provision:

> The City recognizes Lodge # 108 of the Fraternal Order of Police as the exclusive bargaining agent for all permanent, full-time, commissioned police officers of the City of Ardmore, excluding:
>
> (a) The Chief of Police.
>
> (b) The Deputy Chief/Administrative Assistant.

(c) Employees who have not successfully completed one (1) year probationary period from initial date of employment, except as provided for by the Oklahoma state law.[3]

¶ 3 The city employed Kenneth Bridgeman and Nathan Fountain (officers) as sworn police officers. Bridgeman began his employment on 23 June 1997, Fountain on 14 July 1997. The city terminated the officers' service on 22 June 1998, while both still held probationary status. FOP filed grievances on their behalf, but the city refused to participate in the arbitration process.

¶ 4 In May of 1999 FOP brought a complaint before the PERB alleging an unfair labor practice in the city's refusal to arbitrate the officers' grievance.[4] The PERB decided "[p]robationary police officers, upon termination, are not entitled to invoke the [grievance] arbitration provisions of the Collective Bargaining Agreement."[5] FOP appealed from that administrative decision to the district court in accordance with the provisions of the Oklahoma Administrative Procedures Act.[6] The district court upheld the PERB order as free of prejudicial error.[7] The Court of Civil Appeals determined "probationary officers may not, as a matter of law, enjoy the same statutory [employment] protections as permanent police officers." The Court of Civil Appeals pronounced the district court's decision error-free and neither arbitrary nor capricious. It affirmed the district court's judgment. On certiorari granted on FOP's petition, we now vacate the Court of Civil Appeals' opinion and affirm the district court judgment.

1. Identified herein are only those counsel for the parties *whose names appear on the certiorari briefs*.

2. 11 O.S.1991 § 51–101 et seq.

3. Findings of Fact, Conclusions of Law, and Final Order, Fraternal Order of Police, *Lodge 108 v. City of Ardmore*, PERB Case No. 00364 (Jan. 12, 2000), Record at A94.

4. FOP also sought a declaratory judgment. Relying on the PERB's "exclusive jurisdiction" to determine membership of a bargaining unit, the district court dismissed this request. Journal

Entry, Fraternal Order of Police, *Lodge 108 v. City of Ardmore*, Case No. CV–98–508 (Dist. Ct. Carter County, Mar. 3, 1999), Record at A47.

5. Findings of Fact, Conclusions of Law, and Final Order, *supra* note 3, at A93.

6. 75 O.S. Supp.1991 § 250 et seq. Judicial review of administrative decisions is addressed in §§ 318–323.

7. Journal Entry, Fraternal Order of Police, *Lodge 108 v. City of Ardmore*, Case No. CV–00–122 (Dist. Ct. Carter County, filed Aug. 20, 2000), Record at 108.

## II

### STANDARD OF REVIEW

■ ˙ ¶ 5 This case calls for statutory interpretation and presents two legal questions. Questions of law stand before us for *de novo* review. In its reexamination of a trial court's legal rulings, an appellate court exercises plenary, independent, and non-deferential authority.[8] Extant Oklahoma jurisprudence calls for an appellate court to defer to administrative expertise under some defined conditions and at times cloaks an administrative decision in a presumption of validity.[9] No presumption need be recognized in this case. The issues presented on certiorari call **solely** for this court's resolution of legal questions.

## III

### PROBATIONARY POLICE OFFICERS ARE NOT PERMANENT MEMBERS OF THE POLICE DEPARTMENT FOR INVOCATION OF GRIEVANCE ARBITRATION RIGHTS UNDER THE PROVISIONS OF THE FIRE AND POLICE ARBITRATION ACT

■ ¶ 6 In articulating public policy for the Fire and Police Arbitration Act (FPAA),

the legislature provides that the FPAA applies to the "permanent members" of a municipal police department.[10] The Act itself does not define the term "permanent members." The phrase's meaning presents the heart of the controversy now before this court. The legislative inclusion of the adjective "permanent" *eo ipso* indicates the intent to set "permanent" employees apart from "non-permanent" personnel.

¶ 7 The city claims that "permanent," as used in the FPAA, means "not probationary" while FOP insists the adjective means "not temporary." The latter party points to a definition of permanent employment pronounced by this court's 1915 opinion in *McKelvy v. Choctaw Cotton Oil Co.*[11] That authority defines permanent employment as at-will employment, i.e. "employment for an indefinite period which may be severed by either party."[12] The terminus of the type of employment considered in *McKelvy* may be made at the election of either party, for an arbitrary reason, or for no reason.[13]

¶ 8 The issue to be resolved in *McKelvy* was whether a hiring contract that did not expressly state a specific length of employment should be considered a contract for

---

**8.** *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 ("[i]ssues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary independent and non-deferential authority to reexamine a trial court's legal rulings"); *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**9.** *See City of Hugo v. State ex rel. Pub. Employees Relations Bd.*, 1994 OK 134, ¶ 10, 886 P.2d 485, 490 (a "presumption of validity" attaches to the decision of an administrative agency, and "[a]n appellate court may not substitute its judgment for that of an agency, particularly in the area of expertise which the agency supervises") (citations omitted); *Oral Roberts Univ. v. Oklahoma Tax Comm'n*, 1985 OK 97, ¶ 9, 714 P.2d 1013, 1015 (when an ambiguous statute has been construed by an administrative agency and uniformly applied for a number of years, the agency's construction should not normally be disturbed) (citations omitted).

**10.** The terms of 11 O.S.1991 § 51–101 (A) provide:

The protection of the public health, safety and welfare demands that the *permanent members* of any paid fire department or police depart-

ment in any municipality not be accorded the right to strike or engage in any work stoppage or slowdown. This necessary prohibition does not, however, require the denial to such employees of other well-recognized rights of labor such as the right to organize, to be represented by a collective bargaining representative of their choice and the right to bargain collectively concerning wages, hours and other terms and conditions of employment; and such employees shall also have the right to refrain from any and all such activities. (emphasis added).
The pertinent terms of 11 O.S.1991 § 51–101 (B) state: "It is declared to be the public policy of this state to accord to the *permanent members* of any paid fire department or police department in any municipality all of the rights of labor, other than the right to strike or to engage in any work stoppage or slowdown." (emphasis added).

**11.** *McKelvy v. Choctaw Cotton Oil Co.*, 1915 OK 649, 152 P. 414.

**12.** *Id.* at 415.

**13.** *Id.*

temporary or for permanent employment.[14] That is not the controversy in the case now before this court. **No contention is advanced by either party that the officers were hired as temporary employees.** Our adoption of the *McKelvy* definition for application to this case would have us impose an at-will employment status upon all permanent employees, a result in direct contravention of the FPAA's purpose.

¶ 9 Also cited by the FOP is the decision by the Court of Civil Appeals in *City of Oklahoma City v. Public Employees Relations Bd.*[15] That opinion is said to pronounce that probationary police officers are permanent members of the department. The issue in *Oklahoma City* was whether certain police officers, despite their probationary status, could properly be considered permanent employees **solely** for qualifying as voting members of the bargaining unit.[16] The court decided, **for that purpose alone,** probationary officers are to be treated as "permanent employees" of the city.[17] **It is hence settled that officers who hold probationary status are allowed to vote in the union's affairs.**

¶ 10 The mere fact that a probationary police officer may—for some purposes—be considered a permanent employee of the city (because the employee's appointment has no specific termination date), does not confer on that employee the status of "permanent member" of the police department for invoking the benefit of grievance arbitration rights under the FPAA. **We agree with the Court of Civil Appeals that recognition of probationary officers as voting union employees does not *ipso facto* entitle them to the** right of grievance arbitration under the FPAA.

¶ 11 By the provision of the FPAA that defines the Act's relevant terms, police officers are described as "the permanent paid members of any . . . police department in any municipality."[18] It also states that " '[p]olice officers' as used herein shall be those persons as defined in Section 11–50–101 of this title."[19] The terms of that final sentence unequivocally refer the reader to the statutes that govern the Police Pension and Retirement System.[20]

¶ 12 The terms of 11 O.S.1991 § 50–101.6 of the pension enactment define "Officer."[21] That definition stands incorporated by reference into the FPAA. The city also points out that the meaning of another term in the pension act, that of "member," was recently altered explicitly to include those persons who are in training to become permanent members of the police department.

¶ 13 When the police pension statute was first enacted in 1977, it included no definition of the term "member."[22] In 1980, when the term was initially defined, members were described as "all eligible officers of a participating municipality."[23] That provision remained in effect until 1995, when the legislature expanded the definition of "member" to include "any person . . . who is undergoing police training to become a permanent police officer of the municipality."[24] According to the uncontroverted testimony of the city's witness at the PERB hearing, the probationary period is a time when new police officers receive intensive on-the-job training and evaluation.[25] Since a probationary officer is

---

14. *Id.*

15. 1997 OK CIV APP 34, 942 P.2d 244.

16. *Id.,* ¶ 1, at 245.

17. *Id.,* ¶ 4, at 246.

18. 11 O.S.1991 § 50–102.1.

19. *Id.*

20. 11 O.S.1991 § 50–101 et seq.

21. The terms of 11 O.S.1991 § 50–101.6 provide: "Officer" means any duly appointed and sworn full-time officer of the regular police department of a municipality whose duties are to preserve the public peace, protect life and property, prevent crime, serve warrants, enforce all laws and municipal ordinances of this state, and any political subdivision thereof, and who is authorized to bear arms in the execution of such duties.

22. 11 O.S. Supp.1977 § 50–101.

23. 11 O.S. Supp.1980 50–101. 7.

24. 11 O.S. Supp.1995 § 50–101. 7.

25. Assistant Chief of Police Beene testified on behalf of the City of Ardmore. Transcript of Hearing Before the PERB, Fraternal Order of

still undergoing initial police training, one in that position has not yet attained permanent membership status under the terms of the pension statute, even though an officer in that category is nonetheless included in the pension system. The conclusion we are compelled to draw is that the term "member," as employed by the terms of 11 O.S. Supp.1995 § 50–101.7, recognizes probationary police officers as a distinct class from permanent officers.

¶ 14 When the provisions of a statute assign one meaning to a term, its definition will apply in **every other instance** in which the same term is found **anywhere else** in the compilation.[26] Because in the pension statute the term "member" embraces two distinct classes of police officers, probationary and permanent, that distinction applies with equal force under the terms of the FPAA as well. Once the distinction is accepted as binding in the context of the FPAA, it becomes clear that the legislature's use of the modifier "permanent" eliminates from its ambit those officers who still hold probationary status. **In short, it is clear the legislature** *did not intend probationary officers to stand in the class of permanent members*

**of the bargaining unit for invocation of grievance arbitration rights.**

¶ 15 Today's declaration of legislative intent also finds support in 47 O.S.1991 § 2–105 (b), the statute that governs the Oklahoma Highway Patrol. Newly-appointed highway patrol troopers must complete a one-year probationary period.[27] Only upon completion of the required probation are the new troopers classified as permanent.[28] The distinction between probationary and permanent status is **explicitly stated** for the Highway Patrol. We find nothing in any statute (or on the record here) to indicate the legislature did not intend the very same regime to apply in the context of a municipal police department.

¶ 16 Although not dispositive of today's inquiry into legislative intent, we find added support for today's pronouncement in the holdings of other jurisdictions that have addressed the same question. Both in our sister states [29] and in the federal courts,[30] **probationary employees are not treated as permanent employees.** Because of their probationary status, officers serving an initial probationary term lack the full panoply of employment rights enjoyed by those who have completed their initial training period.

Police, Lodge 108, PERB Case No. 00364 (Sept. 17, 1999), Record A, app. A at 12.

**26.** The terms of 25 O.S.1991 § 2 provide "[w]henever the meaning of a word or phrase is defined in any statute, such definition is applicable to the same word or phrase *wherever it occurs*, except where a contrary intention plainly appears." (emphasis added).

**27.** The relevant text of 47 O.S.1991 § 2–105 (b) provides: "Patrolmen provided for in this section shall be required to serve a probationary period of twelve (12) months.... Retention in the service after expiration of the probationary period shall entitle such employee to be classified as a permanent employee."

**28.** *Id.*

**29.** *See Ross v. Washington State Dep't of Soc. and Health Servs.,* 23 Wash.App. 265, 594 P.2d 1386, 1390 (1979) ("[t]he purpose of probationary employment is to provide a trial period of employment during which the employer may observe the performance of the probationary employee before conferring the rights of permanent sta-

tus"); *Smith v. Pima County Law Enforcement Council,* 113 Ariz. 154, 548 P.2d 1151, 1154 (1976) (there is a clear legislative distinction between probationary law enforcement officers and permanent law enforcement officers); *State ex rel. Smith v. City of Margate,* 155 So.2d 165, 166 (Fla.Dist.Ct.App.1963) (it is "obvious[]" that "until fulfillment of the [probationary] period ... the employee does not acquire the benefits of permanent employment").

**30.** In *Booher v. United States Postal Serv.,* 843 F.2d 943, 944 (6th Cir.1988), the court held there was no denial of due process in the termination of a probationary employee because such employee has no property interest in maintaining his position. The court stated: "Probationary status is nothing new; it is agreed that management must retain great flexibility in determining that a probationary employee ought not to be granted permanent status." *Id.* at 945 (quoting *Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986)). *See also United States Postal Serv. v. American Postal Workers Union,* 204 F.3d 523, 528 (4th Cir.2000) (termination of probationary employee is not subject to arbitration where the collective bargaining agreement specifically withholds grievance rights from such employees).

## IV

### THE PUBLIC EMPLOYEES RELATIONS BOARD IS THE ENTITY STATUTORILY AUTHORIZED TO DETERMINE, IN AN INDIVIDUAL PROCEEDING, THE MEMBERSHIP STATUS OF A COLLECTIVE BARGAINING UNIT

¶ 17 The second issue raised on certiorari is whether the PERB has the authority to determine the membership status of a collective bargaining unit. FOP **insists** this court has held—on two previous occasions—that the bargaining unit's membership is strictly defined by statute and cannot be subject to PERB's redetermination.

¶ 18 The legislature created the PERB to "accomplish the objectives and to perform the duties prescribed by" the FPAA.[31] Among the PERB's several functions is to "decide in each case before it in which the issue is raised the unit appropriate for the purposes of collective bargaining," based on a list of enumerated factors.[32] Undeterred by this clear statutory language, FOP claims this court's decisions in *Stone v. Johnson*[33] and *City of Bethany v. Public Employees Relations Bd.*[34] countermand (or undermine) the legislative mandate. We cannot agree.

¶ 19 In *Stone*, the city and the firefighters' union were negotiating a new collective bargaining agreement. The city insisted that certain high-ranking supervisory members of that department be excluded from the bargaining unit. This court held the city's position was not consistent with good-faith negotiation because the legislature specifically included those individuals in the bargaining unit.[35] Once included by statute in the bargaining unit, one may not be "bargained out" of that unit by the parties to the collective bargaining agreement.

¶ 20 The difference between *Stone* and the present case is that in order to bargain one out of the unit, one must first be **included** in that unit. Because probationary police officers **are not permanent members** of the police department with regard to grievance arbitration rights, it necessarily follows that they also are excluded from the bargaining unit for that purpose. As probationary officers are not *pro tanto* in the unit, they cannot be bargained out of it. In short, *Stone* does not apply.

¶ 21 In *Bethany*, the firefighters' union and the city were negotiating for renewal of a collective bargaining agreement. The city insisted that certain issues be exempt from arbitration under the new agreement. The union presented its case to the PERB, which issued a cease-and-desist order. This court held the FPAA does not allow the parties to enact a regime in which some aspects of the collective bargaining agreement are exempt from arbitration.[36] The thrust of that holding is the parties cannot create a "two-tier" system of grievances by selectively bargaining some issues out of the arbitration process.[37] If this were allowed, an impermissible system would emerge which would render some disputes arising under the collective bargaining agreement arbitrable, while other issues could be denied the very same benefit.[38]

¶ 22 The *Stone* rationale also applies to *Bethany*. In order to negotiate an issue **out of arbitration,** that excluded issue **must first be subject** to that process. That is not the case with probationary police officers. Excluding probationary officers from arbitration does not offend *Bethany*. This is so because probationary officers' grievances are deemed not a proper subject for arbitration.

## V

### SUMMARY

¶ 23 The probationary period is a vital tool which allows municipal authorities to ensure

---

31. 11 O.S. Supp.2000 § 51–104.B.

32. 11 O.S.1991 § 51–103.D.

33. 1984 OK 76, 690 P.2d 459.

34. 1995 OK 99, 904 P.2d 604.

35. *Stone, supra* note 33, ¶ 15, at 462.

36. *Bethany, supra* note 34, ¶ 5, at 608.

37. *Id.,* ¶ 17, at 610.

38. *Id.*

only fit individuals serve as police officers. The legislature has recognized a distinction between a probationary police officer and one who is permanent. That distinction withholds from the probationary police officer the benefit of grievance arbitration until such time as one in that position completes the required probationary service. When breathing life into the Fire and Police Arbitration Act, the legislature also created the Public Employees Relations Board and charged that agency with the case-by-case administration of the Act. So long as the legislative mandate remains in force, the Board must continue to exercise its authority (when invoked) to determine for each case which persons make up the unit appropriate for collective bargaining.

¶24 **THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE NISI PRIUS DECISION, INSOFAR AS IT IS CONSISTENT WITH TODAY'S PRONOUNCEMENT, IS AFFIRMED.**

¶25 ALL JUSTICES CONCUR.