2003 OK CIV APP 36

**The CITY OF MIDWEST CITY, Plaintiff/Appellant,**

v.

**The PUBLIC EMPLOYEES RELATIONS BOARD and The Fraternal Order of Police, Lodge No. 127, Defendants/Appellees.**

**No. 97,820.**

Court of Civil Appeals of Oklahoma, Division No. 1.

March 7, 2003.

Margaret McMorrow–Love, Oklahoma City, OK, for Plaintiff/Appellant.

James R. Moore, Douglas D. Vernier, James R. Moore & Associates, P.C., Annette H. Prince, Assistant Attorney General, Oklahoma City, OK, for Defendants/Appellees.

Opinion by BAY MITCHELL, Presiding Judge:

¶1 On November 30, 2000, Fraternal Order of Police Lodge No. 127 ("Lodge 127"), filed an unfair labor practice charge ("ULP") with the Oklahoma Public Employees Relations Board ("PERB") against the City of Midwest City ("City") alleging that City had violated the Fire and Police Arbitration Act ("FPAA") by entering into individual employment agreements with patrol-officer applicants that were conditioned on certain physical fitness standards. Lodge 127 claimed that the fitness standards were a mandatory subject of bargaining and that City's conduct in entering into those agreements with applicants, and declaring later that it would enforce them against employees, violated the FPAA, 11 O.S. § 51–102(6a)(1), (5). PERB issued a cease-and-desist order against City. City appealed to the District Court, which affirmed. Finding PERB's facts and conclusion to be supported by substantial evidence and its order to be within its statutory authority and free of error, we affirm.

### Procedural History

¶2 The parties agreed to waive testimony and submit the case to PERB on the undisputed facts and written briefs of the parties. On September 12, 2001, after oral argument from both sides, PERB dismissed as untimely those portions of the ULP that pertained to individual contracts executed by applicants between 1994 and 1999, but held that the re-execution of those agreements in 1999 constituted an unfair labor practice. PERB ordered City to cease and desist from executing such individual employment contracts in the future, and from enforcing or threatening to enforce any existing fitness contracts.

¶3 On October 12, 2001, City filed a petition for judicial review with the district court under the Oklahoma Administrative Procedure Act ("APA"), 75 O.S. § 301 et seq., asserting that PERB had acted in disregard of competent, material, and substantive evidence in rendering its opinion and findings of fact, and that it had exceeded its authority in issuing its cease-and-desist order. On May 8, 2002, after reviewing the briefs on appeal, the trial court entered an order affirming PERB. This appeal ensued.

### Factual Summary

¶4 Appellant City is a municipal corporation organized and existing pursuant to the laws of the State of Oklahoma. Appellee Lodge 127 is the certified bargaining agent for certain members of City's police department. From 1994 through 1999, City extended conditional offers of employment to successful applicants for the position of patrol officer with City's Police Department. City conditioned its offers of employment on each applicant signing a Contract for Physical Fitness Requirement ("Contract"). Each of the thirty-six individuals City hired as patrol officers from 1994 through 1999 executed the Contract in their capacity as applicants.

¶5 The Contract required the officer applicants to comply with City's physical fitness standards and submit to semi-annual testing to determine compliance. Although the Contract references the physical fitness standards as "attached," the standards were not affixed to the Contract. City alleges that it tested officers for fitness compliance from 1994 forward, but PERB found that City had neither enforced the individual Contracts, nor taken disciplinary action against any of the affected officers during that time.

¶6 In the fall of 1999, after City determined that the originals had been lost or misplaced, each of the thirty-six patrol officers who originally signed the Contracts as applicants re-executed the Contracts. At the time of re-execution, all thirty-six patrol officers were City employees, not applicants or probationary employees, and thus members of the bargaining unit represented by Lodge 127 and covered by the CBA. On October 1, 2000, Lodge 127 submitted written notice to City of its objection to the required execution of the Contracts as a condition of employment for the thirty-six officers and challenged the Contracts' validity. On October 13 and again on November 15, 2000, City

Manager informed Lodge 127 in writing that it believed the individual Contracts to be valid and enforceable against employee members of the bargaining unit.

¶ 7 Although the collective bargaining agreements ("CBAs") that City and Lodge 127 entered into from 1994 through 1999 all contained formal grievance and arbitration procedures mandated by the FPAA, neither Lodge 127 nor any of its members filed grievances during that period regarding City's requirement that applicants execute the Contract. Similarly, Lodge 127 never raised the Contract issue in negotiations for CBAs during that time, nor for the FY 2000–2001 CBA, even though the bargaining related to that agreement occurred after the thirty-six officers employees re-executed the Contract in 1999.

¶ 8 Article 33 of the FY 2000–2001 CBA, entitled "Health Physical," provides that:

*Section 1:* The Employer agrees to provide at no cost to the employee a voluntary examination at a minimum of every five (5) years. At least one physical each five (5) years shall consist of the following:

- History and physical
- Audiometric Testing
- Office battery to include: urinalysis Chem 25, CBC,
- Lipid battery
- EKG (6 lead)
- X–Ray chest and spine
- Pulmonary function exam
- Cybex evaluation or comparable assessment

(a) Exercise tolerance test

*Section 2:* The Employer and employee shall each receive a copy of the results of the medical evaluation.

*Section 3:* All officers with even year employment anniversary dates will be allowed to begin their physical during 1989–90 contract term. All other officers with odd year employment dates will be allowed to begin their testing during 1990/91 contract term. The test will be administered during the employee's anniversary month.

*Section 4:* The examination shall be done with pay at a straight-time rate.

The FY 2000–2001 CBA also includes a management rights clause at Article 5 that permits City "[t]o determine and enforce Police Department policy, rules, regulations and orders, including the right to manage the affairs of the Police Department, so long as they do not affect mandatory subjects of bargaining which are required to be negotiated." Within this limitation, City's rights under Article 5(G) also include the authority "[t]o determine the safety, health and property protection measures for the Police Department."

## Standard of Review

¶ 9 Because City brings its appeal in this case under the APA, 75 O.S. § 318, this Court's review is limited to the record made before the PERB. 75 O.S. § 321. "Appellate courts review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions set forth in the agency order are supported by substantial evidence." *City of Hugo v. PERB*, 1994 OK 134, ¶ 9, 886 P.2d 485, 490. "An appellate court may not substitute its judgment for that of an agency, particularly in the area of expertise which the agency supervises." *Id.,* ¶ 10. "If the facts determined by the administrative agency are supported by substantial evidence, and the order is otherwise free of error, the decision of the agency must be affirmed." *Tulsa Area Hospital Council, Inc. v. Oral Roberts University,* 1981 OK 29, ¶ 10, 626 P.2d 316, 320.

¶ 10 Reversal is appropriate if we find that the agency made its decision "in excess of statutory authority or jurisdiction" or entered its order "based on an error of law." *City of Tulsa v. Pub. Employees Relations Bd.,* 1998 OK 92, ¶ 12, 967 P.2d 1214, 1219. "Reversal is also appropriate if the agency's findings are clearly erroneous in view of the reliable, material, probative and substantial competent evidence in the record." *Id.,* ¶ 13.

## Analysis and Review

¶ 11 City contends on appeal that the district court committed reversible error in failing to find that: (1) PERB disregarded competent, material, and substantive evi-

dence of City's valid past practice in the execution and enforcement of the Contracts from 1994 through 1999; (2) PERB disregarded competent, material, and substantive evidence that the terms and conditions of employment existing between City and members of Lodge 127 were the established *status quo* and had not been unilaterally altered by City in violation of the CBA; (3) PERB disregarded competent, material, and substantive evidence pertaining to the reservation of management rights under the CBA; (4) PERB disregarded competent, material, and substantive evidence pertaining to Lodge 127's failure to negotiate in good faith for any change in established past practice as mandated by the FPAA; (5) PERB exceeded its statutory authority under 11 O.S. § 51–104b(C) by issuing a cease-and-desist order in the absence of evidence that City's conduct violated the FPAA; (6) PERB exceeded its statutory authority under 11 O.S. § 51–104b(C) by issuing a cease-and-desist order purporting to address issues not encompassed within the ULP—specifically the re-execution of agreements in 1999—thus impairing legitimate contractual relationships between City and Lodge 127, including the grievance process contained in the CBA as mandated by the FPAA; and (7) the cease-and-desist order was overly broad in scope and impacted the exercise of management rights acknowledged in the CBA, which rights are subject to good faith bargaining pursuant to the FPAA.[1] In sum, City disputes several of PERB's factual findings and argues that PERB exceeded its authority in issuing the cease-and-desist order.[2]

█ ¶ 12 Because they were applicants at the time, Lodge 127 did not represent any of the thirty-six patrol officers when they originally signed the fitness Contracts. An officer does not become a member of the bargaining unit and cannot be represented by a bargaining agent until after a twelve month probationary period passes from date of hire. *Fraternal Order of Police, Lodge 108, v. City of Ardmore,* 2002 OK 19, ¶¶ 14, 16, 44 P.3d 569, 573. The CBA between City and Lodge 127 covered only employee members of the bargaining unit, not applicants.

█ ¶ 13 City argues that the fitness Contracts are enforceable as past practice based upon the longevity of the physical fitness requirements in regard to *applicants* coupled with the failure of Lodge 127 to object to the conditions through a formal grievance. City further maintains that it cannot be said to have unilaterally altered the terms and conditions of the patrol officers' employment because the fitness standards were the established *status quo.*

█ ¶ 14 "In approaching a dispute between a[CBA] and a past practice, the starting point of the analysis must be the language of the contract. If the contract language is unambiguous, then it must be regarded as conclusive notwithstanding a contrary past practice. If, however, the contract language is ambiguous, then past practice may be examined to determine the nature of the parties' agreement." *CBI Services v. United Paperworkers Int'l Union, AFL–CIO, Local 50002,* 98 Lab. Arb. (BNA) 1111, 1114–15 (1992) (Cohen, Arb.).

¶ 15 The language in the CBA regarding fitness testing appears under the heading "Health Physical" in Article 33. It states that City will offer to each bargaining unit member, on a voluntary basis, a no-cost physical exam, to include an exercise tolerance test, at least once every five years and as often as once every other year. Unlike the fitness Contracts, Article 33 of the CBA does not condition employment on successful completion of the physical exam, nor does it

---

1. Although City listed as an additional issue on appeal in its Petition in Error the district court's alleged failure to employ the correct standard of review, it failed to brief this point in its submissions to this Court. We thus deem the issue waived. Okla. Sup.Ct. R. 1.11(k).

2. In addition to these points of error, which it addressed before the district court below, City also raised a new argument for the first time on appeal, namely, that due to Lodge 127's silence on the subject during FY 2000–2001 CBA negotiations, Lodge 127 is now equitably estopped from complaining about the fitness Contracts. Given that City failed to present this issue either to PERB or the district court, it is not properly before us and we will not consider its merits. Okla. Sup.Ct. R. 1.26(a), (b).

set forth particular fitness standards that patrol officers are expected to meet.

¶ 16 It is well-settled that an individual hiring contract is subsidiary to the terms of the collective bargaining agreement and may not waive any of its benefits. *J.I. Case Co. v. NLRB*, 321 U.S. 332, 336–38, 64 S.Ct. 576, 88 L.Ed. 762 (1944). The benefits and advantages of the CBA are available to every covered bargaining unit member, regardless of the terms of a pre-existing contract of employment. *Id.* at 337–38. Accordingly, because the terms of Article 33 are unambiguous, and the individual Contracts are subsidiary to the CBA, City's statement of intent to enforce fitness requirements and testing against thirty-six members of the bargaining unit beyond those set forth in Article 33 violates the FPAA.

¶ 17 Consideration of City's "past practice" evidence leads us to the same conclusion. While it is true that "[a]ll rules, regulations, fiscal procedures, working conditions, departmental practices and manner of conducting the operation and administration" of City's police department that were in effect upon the effective date of the CBA are deemed to be part of the CBA, 11 O.S.2001, § 51–111, past practice is binding on both parties *only* if it is (1) unequivocal; (2) clearly enunciated and acted upon; and (3) readily ascertainable over a reasonable period of time, as a fixed and established practice accepted by both parties. *Celanese Corp. of America,* 24 Lab. Arb. (BNA) 168, 172 (1954) (Justin, Arb.); *Int'l Assn. of Fire Fighters Local 1881 and City of Ardmore,* FMCS Arb. No. 90–22990 (1990) (Springfield, Arb.).

¶ 18 Given that the Contracts did not include the specific fitness standards to which they referred, City's alleged past practice can hardly be said to be either unequivocal or clearly enunciated. Furthermore, City did not announce its belief that the Contracts were enforceable against *employees* until the fall of 1999. The Contracts previously had been signed only by applicants, whom the CBA did not bind and Lodge 127 did not represent. In addition, it is undisputed that, since their inception in 1994, City has never disciplined an officer for failing to meet the Contract standard. Moreover, the time period between the 1999 re-execution of the Contracts and Lodge 127's filing of the ULP later that year—during which time City admittedly failed to enforce the Contracts pending review by a newly-created physical fitness committee—was plainly insufficient to establish terms and conditions of employment related to physical fitness that were "readily ascertainable over a reasonable period of time, as a fixed and established practice accepted by both parties."

¶ 19 Because the fitness standards do not qualify as a valid past practice or settled *status quo,* City's claim that Lodge 127 did not meet its obligation to negotiate and bargain in good faith over them fails as well. Pursuant to the terms of the FPAA, a municipality and the bargaining agent for police officers may enter into negotiations for annual collective bargaining agreements during which they are required to negotiate in good faith. 11 O.S. § 51–111. To be valid, however, a good-faith claim must pertain to a party's failure to negotiate *established* terms and conditions of employment. Given our determination that the fitness standards do not qualify as a valid past practice or the settled *status quo,* they were not established terms and conditions of employment subject to a good-faith bargaining and negotiation requirement.

¶ 20 City's management-rights claim fails for similar reasons. Under the FPAA, mandatory subjects of bargaining include "wages, hours, and other conditions of employment." 11 O.S.2001 § 51–102(5). An employer is allowed to alter the terms and conditions of employment only "when a management rights clause evidences a grant of permission by the union to unilaterally effect such changes." *I.A.F.F. local 2171 v. City of Del City,* PERB Case No. 194 (1990); *Continental Tel. Co.,* 274 NLRB 1452 (1985). While the management rights clause of the FY 2000–2001 CBA permits City "[t]o determine the safety, health and property protection measures for the Police Department," it may "determine and enforce Police Department policy, rules, regulations and orders *... so long as they do not affect mandatory subjects of bargaining which are required to*

*be negotiated."* Given that the fitness requirements affect the terms and conditions of the patrol officers' employment and were not a valid past practice, they constitute a mandatory subject of bargaining to which City may not effect unilateral changes.

¶ 21 We thus reject City's challenges to PERB's factual findings and hold that they are supported by substantial evidence.

■ ¶ 22 In addition to its disagreement with PERB's factual findings, City also maintains on appeal that PERB exceeded its authority in issuing its cease-and-desist order. In its ULP, Lodge 127 alleged:

> City has violated the FPAA by entering into individual employment agreements regarding physical fitness standards with police officers prior to their date of employment with the City. City has expressed the intent to enforce these individual agreements after officers become part of the collective bargaining unit. City has not bargained these fitness standards with the FOP, the bargaining agent for said officers. Said standard, and other terms of the individual agreements, are mandatory subjects of bargaining under the FPAA. City's conduct in attempting to enforce individual contracts with unit members violates the Act. City's conduct in creating and enforcing terms and conditions of employment without an agreement with the FOP violates the terms of the Act.

The test of unfair labor practice "is not whether the attempt to intimidate, interfere, or coerce succeeded or failed, but that the conduct was such that it tends to interfere with the free exercise of those rights." *De-Queen Gen. Hosp. v. NLRB,* 744 F.2d 612, 614 (8th Cir.1984).[3]

■ ¶ 23 City claims that PERB exceeded its authority when it addressed the 1999 re-execution of the Contracts, because the ULP did not address re-execution. While it is true that the word "re-execution" does not appear in the narrative portion of Lodge 127's charge, the pleading refers to City's "intent to enforce these individual agree-

ments after officers become part of the collective bargaining unit" and "conduct in attempting to enforce individual contracts with unit members." It is disingenuous for City to claim that such references to enforceability against bargaining unit members did not put it on notice that Lodge 127 was referencing the re-executed Contracts. The original Contracts were enforceable against applicants only. It was their re-execution by members of the bargaining unit that caused Lodge 127's initial concern and prompted City's claim that they are valid against employees.

■ ¶ 24 "The substance of the pleading will control over the strict form of the pleading." *Jones v. Oklahoma Merit Protection Comm'n,* 1993 OK CIV APP 96, ¶ 9, 860 P.2d 804, 806 (holding that plaintiff's failure to specifically identify the administrative rule he was challenging did not render district court's ruling on his appeal before the Oklahoma Merit Protection Commission overly broad, where plaintiff's statement was sufficient to put the parties on notice of his challenge to the rule). "[A] short and plain statement of the claim showing that the pleader is entitled to relief" is all the law requires. 12 O.S.2001 § 2008(A)(1). Lodge 127's narrative basis for its charge was sufficient to put City on notice that Lodge 127's complaint encompassed the re-execution of the Contracts by bargaining unit members. City's argument that PERB exceeded its authority by addressing that issue is therefore misplaced.

¶ 25 City's remaining two allegations that PERB exceeded its authority also fail. Given our holding today that substantial evidence exists to support PERB's findings that City violated the FPAA, we find without merit City's contention that PERB exceeded its authority in issuing a cease-and-desist order in the absence of evidence that the City violated the FPAA. City's speculation that the cease-and-desist order is overly broad in that it could be read to prohibit City from entering into any individual contracts, is likewise misplaced. PERB's order is not

---

3. In interpreting the FPAA, it is appropriate for us to consider federal labor law decisions involving parallel federal statutes such as the National Labor Relations Act. *Stone v. Johnson,* 1984 OK 76, ¶ 14, 690 P.2d 459, 462.

advisory, but resolves the particular issues before it, namely, the legality of City entering into and threatening to enforce individual fitness Contracts with bargaining unit members without conducting good-faith bargaining over same.

¶ 26 For these reasons, we AFFIRM.

HANSEN and JONES, JJ., concur.