2011 OK CIV APP 113

**CITY OF COWETA, an Oklahoma Municipality, Plaintiff/Appellee,**

v.

**David DOUGHTEN, an individual, and Coweta Fraternal Order of Police Lodge 192, Defendants/Appellants.**

No. 108,962.

Court of Civil Appeals of Oklahoma, Division No. 4.

June 22, 2011.

Certiorari Denied July 12, 2011.

David L. Weatherford, Birmingham, Morley, Weatherford & Priore, Tulsa, Oklahoma, for Plaintiff/Appellee.

Jarrod A. Leaman, Moore & Vernier, P.C., Oklahoma City, Oklahoma, for Defendants/Appellants.

JERRY L. GOODMAN, Presiding Judge.

¶ 1 This is an appeal by Defendants, David Doughten and the Fraternal Order of Police, Lodge 192(FOP), from the trial court's ruling in favor of the City of Coweta (City). City filed a petition for a declaratory judgment, seeking a judicial declaration that it could terminate the employment of Doughten, a probationary police officer, without a hearing and without cause. For the following reasons, we affirm.

## UNDISPUTED FACTS

¶ 2 City hired Doughten as a police officer in February 2009 and placed him on proba-

tionary status. He was terminated in May 2010 while still on probation. City asserted Doughten had been disciplined numerous times for failing to submit reports and to follow directives, as well as for sleeping on the job. City terminated him without providing a hearing.

¶ 3 Doughten asked the FOP, the local police union, to file a grievance on his behalf. Initially, the FOP did so, asserting Doughten's right to due process had been violated and that the Collective Bargaining Agreement (CBA) between City and the FOP limited City's right to hire and fire "Employees" of the police department "for just cause." [1]

¶ 4 City pointed out that the CBA specifically excluded probationary officers from the definition of "Employees." [2] Ultimately, FOP agreed that the CBA did not apply to Doughten, and stated it was withdrawing the grievance.

¶ 5 Doughten notified City that even though he was not covered by the CBA, he was entitled to a hearing by a board of review and could only be terminated for cause. Doughten relied on 11 O.S.2001, § 50–123, which is one of the statutes governing the Municipal Police Pension and Retirement Fund. This section states:

A. The governing body of every participating municipality, except municipalities which have provided for a civil service board of review or merit board, *or have negotiated a contract covering discharge with their members to hear such appeals,* shall establish a board of review to hear appeals concerning the discharge of members . . . .

B. No member may be discharged except for cause. Any member who is dis-

---

1. "Except as may be limited herein, the Employer retains the rights . . . To direct the members of the Police Department, including the right to hire, terminate, suspend, discipline, promote or transfer any Employee, for just cause, of the Police Department[.]" CBA, Article 3, Section 2(C).

2. "It is understood and agreed that the word "Employees" of the Coweta Police Department means any duly appointed and sworn full-time officer of the regular Police Department of the

municipality of Coweta (excluding newly hired probationary officers)[.]" CBA, Article 2.

We note that Article 6 of the CBA provides that employees will serve a 12–month probationary period, which can be extended by City for an additional six-month period. Doughten was hired in February 2009 and his probationary period was extended by City in February 2010. He was fired in May 2010. None of the parties dispute that at the time of firing, he was still a newly hired probationary officer.

charged may appeal to the board of review herein provided.... (Emphasis added).

¶ 6 Doughten is indisputably a member of the pension system. The relevant statute defines "Member" as "all eligible officers of a participating municipality and any person who is hired by a participating municipality who is undergoing police training to become a permanent police officer of the municipality." 11 O.S.2001 and Supp. 2010, § 50-101(7). The latter category, covering those persons undergoing training, includes probationary officers such as Doughten. *See Fraternal Order of Police, Lodge 108 v. City of Ardmore*, 2002 OK 19, ¶ 13, 44 P.3d 569, 572-73. Based on his status as a "member," he asserted he was entitled to a hearing and could only be discharged for cause.

¶ 7 City disagreed and filed a petition for a declaratory judgment, seeking a judicial determination that Doughten's probationary status meant he was an at-will employee, subject to termination without cause and without a hearing. City asserted that because the CBA provided for a grievance procedure, it had met one of the exceptions in § 50-123 for cities that "have negotiated a contract covering discharge with their members to hear such appeal." [3] City also asserted there was "conflicting direction" from the Supreme Court on this point, citing *Fraternal Order of Police, Lodge 108 v. City of Ardmore*, 2002 OK 19, 44 P.3d 569, and *City of Durant v. Cicio*, 2002 OK 52, 50 P.3d 218.

¶ 8 FOP filed a motion to dismiss itself from the lawsuit, asserting that because it was withdrawing the grievance, it "ha[d] nothing to do with Doughten's request for a pension board of review hearing." All three parties sought summary judgment.

¶ 9 Following a hearing, the trial court issued a journal entry, finding that Doughten was not protected by the statute. The journal entry states:

The plain reading of § 50-123(A) is that the protections of the statute no longer apply where a municipality and a union "have negotiated a contract covering discharge with their members to hear such appeals...." The CBA recognizes the FOP as "the exclusive bargaining agent" for FOP members (CBA Article 2). In the give and take of negotiation, the FOP may bargain on behalf of its members, gaining new rights that it deems important and giving up other rights that it deems not so important. In the CBA, the FOP gained the right to grievance and arbitration for its permanent, full-time members, and bargained away the statutory right to discharge review for its probationary members.

For the reasons stated, the Court finds that Doughten is not protected by Title 11 O.S. § 50-123.

¶ 10 The trial court further found that because the FOP had withdrawn the grievance, the issue of whether it could assert a grievance on behalf of Doughten was moot.

¶ 11 Doughten and the FOP appeal.[4]

### STANDARD OF REVIEW

¶ 12 The trial court did not specifically state it was granting City's motion for summary judgment, though the parties have proceeded as if it had. In any case, because the facts are not disputed, only a question of law is presented. In such cases, an appellate court will apply the same standard of review as in summary judgment cases, which is a *de novo* review. *See Baptist Bldg. Corp. v. Barnes*, 1994 OK CIV APP 71, ¶ 5, 874 P.2d

---

3. "The parties agree a grievance procedure shall exist whereby a grievance shall be presented in writing, within 10 calendar days of the occurrence, to the Police Chief and, if not resolved, shall be presented to the City Manager within calendar 10 days of denial by the Police Chief. If still unresolved, the parties shall agree upon an arbitrator within 10 days and, if unable to agree to a neutral arbitrator, shall jointly request the appointment of a neutral arbitrator by letter to the Associate District Judge of Wagoner County...." CBA, Article 21.

4. Doughten and the FOP's petition in error mistakenly lists them as Appellees and City as Appellant. This Court has corrected the style of the opinion.

While the FOP is listed as a party, the petition in error states the appellants are not appealing the trial court's finding of mootness regarding FOP's assertion of a grievance on behalf of Doughten. Therefore, the issues on appeal only involve those brought by Doughten.

68, 69. This is also the standard used to review legal questions involving statutory interpretation. *Casey v. Casey*, 2005 OK 13, ¶ 7, 109 P.3d 345, 348. In a *de novo* review, the appellate court has plenary, independent, and nondeferential authority to reexamine legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, ¶ 5 n. 1, 932 P.2d 1100, 1103 n. 1.

## ANALYSIS

¶ 13 Doughten is clearly not accorded the right to a hearing under the CBA. The CBA indisputably does not apply to him because it excludes probationary officers.

¶ 14 Neither is Doughten entitled to a hearing under general due process principles. The Oklahoma Supreme Court has noted, citing several federal court decisions, that a probationary employee has no property interest in maintaining his or her job. *Fraternal Order of Police, Lodge 108 v. City of Ardmore*, 2002 OK 19, ¶ 16 n. 30, 44 P.3d 569, 573 n. 30.

■ ¶ 15 Nevertheless, Doughten asserts he is entitled to a hearing due to his status as a member of the Municipal Police Pension and Retirement System, which is governed by 11 O.S.2001, § 50–101 et seq. As previously quoted, § 50–123 requires participating cities to establish a board of review to hear appeals concerning the discharge of members. The statute contains two exceptions, in cases where cities have already put an appeals process in place by: (1) providing for a board of review; or (2) negotiating a contract covering discharge with their members to hear such appeals.

■ ¶ 16 City has not provided for a board of review. However, City has negotiated a contract covering discharge—the CBA. While the CBA does not provide for a board of review, it does provide for a grievance procedure employing an arbitrator. Because the CBA "covers" discharge of City's members, either through inclusion or exclusion from the grievance process, it meets the statute's exception. Consequently, City is not required to establish a board of review. Moreover, because the CBA specifically excludes probationary officers such as Doughten, City is not required to use the grievance process therein to review his termination.[5]

¶ 17 Doughten relies on *City of Durant v. Cicio*, 2002 OK 52, 50 P.3d 218. In *Cicio*, a discharged police officer asserted that because he was a member of the pension system, he was entitled to a board of review hearing under § 50–123. The Supreme Court agreed, holding the statute "is clearly intended to protect policemen who are members of the state pension and retirement system from arbitrary discharge from employment. . . . [T]he statute restricts the reason for their discharge to "for cause" and assures that all members will have the right to appeal the discharge from employment." *Id.* at ¶ 14, 50 P.3d at 220–21.

¶ 18 Indisputably, like the officer in *Cicio*, Doughten is a member of the pension system. However, in *Cicio*, the officer was *a permanent employee;* in the present case, Doughten was not a permanent employee but a probationary employee.

¶ 19 This distinction is critical when the other decision cited by City is examined. In *Fraternal Order of Police, Lodge 108 v. City of Ardmore*, 2002 OK 19, 44 P.3d 569, two probationary officers were discharged. The officers, through their local FOP, filed grievances. Ardmore refused to arbitrate be-

---

5. The trial court reasoned that because Doughten was a member of the FOP, he was bound by the terms negotiated by it. Now, for the first time, Doughten asserts he was *not* an FOP member, and the trial court erred in finding otherwise.

This matter is not dispositive of the appeal, for two reasons:

(1) In its response to his motion for summary judgment, City stated FOP was "his union." Doughten did not dispute this in his reply to City's response; thus, the matter can be said to be waived.

(2) It has been stated that an officer does not become a member of a bargaining unit and cannot be represented by a bargaining agent until after his or her probationary period ends. *City of Midwest City v. Pub. Employees Relations Bd.*, 2003 OK CIV APP 36, ¶ 12, 69 P.3d 1218, 1223. However, Doughten's right to a hearing depends on his status as a probationary officer of City and as a member of the Pension System, not on whether he is a member of the FOP. Thus, any error is harmless.

cause its CBA excluded probationary officers from the grievance procedure. The FOP brought an unfair labor practice complaint before the Public Employees Relations Board.

¶ 20 The Oklahoma Supreme Court held that because the police officers were probationary officers, they were not "permanent members" of the police department for purposes of invoking grievance arbitration rights provided by the Fire and Police Arbitration Act (FPAA), 11 O.S.2001, § 51–101 et seq. *Id.* at ¶ 1, 44 P.3d at 570. The Court considered this distinction between probationary and permanent members crucial, because the Act, at §§ 51–101(A) and (B), accords the rights of labor (except the right to strike/engage in a work stoppage) only to "permanent members" of any paid municipal fire/police department. The Court reasoned that the FPAA's grievance procedures would therefore not apply to officers who were not permanent, including the two probationary officers.

¶ 21 To reach its decision, the Court examined the interplay between § 50–101 et seq. (the pension system statutes found Title 11), and § 51–101 et seq. (the FPAA's arbitration statutes that immediately follow the pension system statutes). The Court reviewed the statute, which defines fire fighters and police officers as *permanent* paid members of any municipal fire or police department, and further states, " 'Police officer' as used herein shall be those persons as defined in Section 50–101 of this title." The Court noted the terms of the sentence "unequivocally refer the reader to the statutes that govern the Police Pension and Retirement System," *id.* at ¶ 11, 44 P.3d at 572; meaning that a definition in § 50–101 "stands incorporated by reference into the FPAA." *Id.* at ¶ 12, 44 P.3d at 572.

¶ 22 Then the Court moved on to § 50–101, and noted the statute had defined "member" as "all eligible officers" until 1995, when § 50–101(7) was amended to expand the definition to include all eligible officers *and* anyone undergoing police training to become a permanent police officer. The Court concluded, "Since a probationary officer is still undergoing initial police training, one in that

position has not yet attained permanent membership status under the terms of the pension statute, even though an officer in that category is nonetheless included in the pension system." *Id.* at ¶ 13, 44 P.3d at 572–73. In other words, a probationary officer is a "member" for purposes of participating in the pension system, but not for purposes of invoking the grievance procedures provided by FPAA.

¶ 23 The Court concluded its analysis as follows:

> When the provisions of a statute assign one meaning to a term, its definition will apply in **every other instance** in which the same term is found anywhere else in the compilation. Because in the pension statute the term "member" embraces two distinct classes of police officers, probationary and permanent, that distinction applies with equal force under the terms of the FPAA as well. Once the distinction is accepted as binding in the context of the FPAA, it becomes clear that the legislature's use of the modifier "permanent" eliminates from its ambit those officers who still hold probationary status. **In short, it is clear the legislature did not intend probationary officers to stand in the class of permanent members of the bargaining unit for invocation of grievance arbitration rights.**

*Id.* at ¶ 14, 44 P.3d at 573 (footnote omitted; emphasis in original).

¶ 24 Because Doughten is a probationary officer, he does not enjoy grievance arbitration rights provided by the FPAA. While he relies on § 50–123 of the pension system statutes, he seeks the same remedy as the officers in *Ardmore*—a hearing concerning the loss of employment. Furthermore, it seems unlikely that the Legislature intended to grant probationary officers such as Doughten the right to dismissal only for just cause, when it specifically limited "all the rights of labor" to permanent members of police departments, as mandated in the FPAA's § 51–101(B). Because Doughten does not have the right to a hearing or to be terminated only for just cause under *Ardmore* or the CBA, and because he is not a

permanent officer as in *Cicio*, the trial court correctly ruled he cannot apply § 50–123.

¶ 25 Our conclusion is supported by additional analysis of that statute. Subsection (A) specifically exempts a city from establishing a board of review if it has "negotiated a contract covering discharge of its members." Under § 50–101(7)'s definition, this includes members who are permanent or probationary. City has qualified for this exception, through the CBA. Subsection (B) of § 50–123 then states that no member can be discharged except for cause, and that "Any member who is discharged may appeal to the board of review herein provided." The statute would lead to an absurd result if it required an appeal to a board after allowing a city to adopt an alternative to the board. Clearly, subsection (B) only applies when the exceptions in (A) do not apply.[6]

### CONCLUSION

¶ 26 The definition of "probationary" is to be "tried out," on a trial basis, to ascertain an individual's fitness for something. *Webster's Third New International Dictionary* 1806 (1986). The Oklahoma Supreme Court has recognized that a probationary period helps ensure that only fit individuals serve as police officers and that the Legislature recognizes a distinction between permanent and probationary officers. The latter do not have the "full panoply of employment rights enjoyed by those who have completed their initial training period." *Ardmore*, at ¶¶ 16 and 23, 44 P.3d at 569, 574–75. Accordingly, the trial court's decision is affirmed.

¶ 27 AFFIRMED.

RAPP, J., and BARNES, J. (sitting by designation), concur.

---

6. An unpublished Court of Civil Appeals case, # 104,639, *O'Dell v. City of Tulsa, Oklahoma,* cited by Doughten to the trial court, does not include the analysis expressed herein.