2017 OK CIV APP 29

**John Travis HART, Plaintiff,**

**and**

**Erin Kathleen Hart, Plaintiff/Appellant,**

**v.**

**Tommy Ray WARNER and Tapp Worldwide, L.L.C., Defendants/Appellees.**

**Case Number: 113569**

Court of Civil Appeals of Oklahoma, Division No. 2.

Decided: 01/23/2017

Mandate Issued: 05/24/2017

Timothy B. Hummel, Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Thomas G. Ferguson, Jr., WALKER, FERGUSON & FERGUSON, Oklahoma City, Oklahoma, for Defendant/Appellee.

OPINION BY JOHN F. FISCHER, PRESIDING JUDGE:

¶1 Erin Hart appeals a December 12, 2014 Journal Entry granting her motion for prejudgment interest in this personal injury action. The issue in this case is whether the applicable law is the law in effect when Hart's suit was filed, or the law in effect when the verdict in Hart's case was accepted. Hart argues that it was unconstitutional for the district court to apply 12 O.S. Supp. 2013 § 727.1, the law in effect on the date the jury returned a verdict in her favor. We affirm because the 2013 version of section 727.1 provides a mode of procedure that the district court was required to follow.

## BACKGROUND

¶2 Hart was severely injured in an automobile accident in March of 2011. On October 31, 2011, Hart filed suit naming as defendants the driver of the vehicle who caused the accident and his employer. The jury returned a verdict in Hart's favor on June 18, 2014, in the amount of $960,000 and judgment was entered on that verdict on July 8, 2014. Hart filed a post-trial motion seeking in excess of $100,000 in prejudgment interest based on her interpretation of the pre-November 1, 2013 law, the law in effect when Hart filed her petition. The district court granted Hart's motion on September 12, 2014, but applied the law in effect when Hart's verdict was accepted and awarded her prejudgment interest in the amount of $366.67. Hart challenges the constitutionality of 12 O.S. Supp. 2013 § 727.1 as it was applied in her case.[1]

---

1. Because we hold that 12 O.S. Supp. 2013 727.1 was constitutionally applied in this case, we do not address Hart's compliance with 12 O.S.2011 § 2024(D) (superseded without material change effective November 1, 2016) requiring notice to

## STANDARD OF REVIEW

¶ 3 An appellate court will not invalidate an act of the legislature "unless it is clearly, palpably, and plainly inconsistent with the terms of the Constitution." *Rivas v. Parkland Manor*, 2000 OK 68, ¶ 6, 12 P.3d 452 (citing *Hazel-Atlas Glass Co. v. Walker*, 1945 OK 176, 159 P.2d 268).

■ A constitutional analysis begins with the well-known judicial recognition that the Oklahoma Legislature is constitutionally vested by Article 5 § 36 of our Constitution with a supreme legislative power extending to all rightful subjects, and the presumed constitutionality of a legislative enactment is rebutted only when either the State Constitution or federal law prohibits that enactment.

■ *Torres v. Seaboard Foods, LLC*, 2016 OK 20, ¶ 17, 373 P.3d 1057 (footnotes omitted). An appellate court will not invalidate an act of the legislature "unless it is clearly, palpably, and plainly inconsistent with the terms of the Constitution." *Rivas v. Parkland Manor*, 2000 OK 68, ¶ 6, 12 P.3d 452 (citing *Hazel-Atlas Glass Co. v. Walker*, 1945 OK 176, 195 Okla. 470, 159 P.2d 268). The standard of review is de novo, without deference to the district court's legal ruling. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, n.1, 932 P.2d 1100.

## ANALYSIS

¶ 4 For certain personal injury cases filed between January 1, 2000, and January 1, 2005, 12 O.S.2001 727(E) governed the award of prejudgment interest. In 2004, the Legislature replaced section 727(E). The new statute governed prejudgment and postjudgment interest for cases filed after January 1, 2005, and provided that prejudgment interest would be added based on a rate of 2% above the prime interest rate and for the period from the date the suit was filed until the earlier of when the verdict was accepted or the judgment was filed. *See* 12 O.S. Supp. 2004 727.1. Section 727.1 was amended in 2009 to reduce the interest rate to the amount paid by United States Treasury Bills and to exclude the first two years after the suit was filed from the period of the calculation.

¶ 5 On June 4, 2013, the 2009 amendment was declared unconstitutional in *Douglas v. Cox Retirement Properties, Inc.*, 2013 OK 37, 302 P.3d 789 (holding that the Comprehensive Law Suit Reform Act of 2009, including the 2009 version of section 727.1, violates the "single subject rule" and is unconstitutional). One effect of the *Douglas* decision was to temporarily reinstate the 2004 version of section 727.1. However, in response to *Douglas* the Legislature amended section 727.1 again, restoring the 2009 prejudgment interest rate and calculation period. The amended version became effective November 1, 2013.[2] The verdict in Hart's case was rendered on June 18, 2014, and judgment on that verdict was filed on July 8, 2014. Hart's motion for prejudgment interest was filed in August of 2014 and granted by the district court. Pursuant to the 2013 version of section 727.1, the district court awarded prejudgment interest at the Treasury Bill rate and excluded the first two years after the lawsuit was filed from the calculation period.

¶ 6 Hart appeals that ruling arguing that the district court erred in determining the amount of her prejudgment interest pursuant to the 2013 version of section 727.1. We are not persuaded.

### I. Previous Precedent

■ ¶ 7 If Hart's case were being decided pursuant to the pre-2005 law, 12 O.S.2001

---

the Oklahoma Attorney General of a constitutional challenge to any State statute.

2. The 2013 amendment provides, in part:
   [B]eginning November 1, 2009, if a verdict for damages by reason of personal injuries or injury to personal rights ... is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section [specifying the United States Treasury Bill rate] from the date which is twenty-four (24) months after the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. No prejudgment interest shall begin to accrue until twenty-four (24) months after the suit resulting in the judgment was commenced.

12 O.S. Supp. 2013 § 727.1(E).

§ 727(E), the answer would be clear. "At common law judgments do not bear interest. Therefore, recovery of interest on a judgment must be predicated on statute." *Sisney v. Smalley*, 1984 OK 70, ¶ 8, 690 P.2d 1048. In *Benson v. Blair*, 1973 OK 102, 515 P.2d 1363, the Supreme Court held that the nature and amount of interest that will accrue on judgments is a matter of statute within the province of the Legislature. "That the legislature may, in its discretion, establish interest that will accrue on a judgment, is, of course, recognized." *Id.* ¶ 6 (citing *Sunray DX Oil Co. v. Great Lakes Carbon Corp.*, 1970 OK 149, 476 P.2d 329). Further, the Court determined from the language of the prejudgment interest section of the statute that the Legislature intended for that provision to apply retrospectively to any judgments entered on verdicts accepted after the subdivision was adopted. "Not being of the substance of the right of action ... but being a directive to the trial court, then it becomes a mode of procedure which the court was bound to follow." *Id.* The case was remanded to the district court with directions to add the statutorily prescribed amount of prejudgment interest.

■ ¶ 8 Because the prejudgment interest provision of section 727 became effective the day the verdict in *Benson* was rendered, it appears that the Court's discussion of "retrospective" application of the statute refers to application of the prejudgment interest provision of the statute to cases filed before that section of the statute was adopted. That interpretation was confirmed in *Fields v. Volkswagen of America, Inc.*, 1976 OK 106, 555 P.2d 48.

> In *Benson v. Blair* ... this court held specifically that [section 727(2) ], because it is procedural rather than substantive, directs allowance of interest on judgments from the time the suit commenced to the date of the verdict, notwithstanding that the suit was commenced prior to the effective date of the legislation.

*Id.* ¶ 66. Citing both *Benson* and *Fields*, the court in *Fleming v. Baptist General Convention of Oklahoma*, 1987 OK 54, ¶ 31, 742 P.2d 1087, noted that the district court was "commanded" by the legislature to award prejudgment interest pursuant to a statute adopted after the suit was filed. *Id.* ¶ 34. Consequently, Oklahoma law has consistently recognized that the application of prejudgment interest statutes to cases filed before the statute was adopted is constitutional as long as the effective date of the statute predated the acceptance of the verdict.

¶ 9 Although the constitutionality of section 727(E) has been firmly established, neither this Court nor the Supreme Court has previously considered the constitutionality of section 727.1 as it is applied to cases, like Hart's, filed before the statute was adopted. The two statutes are different in some respects, but their effect is essentially the same: prejudgment interest is assessed at the statutory rate in effect when a verdict is accepted. Consequently, to prevail Hart must distinguish her case from the cases interpreting and applying section 727(E) despite similar, if not identical, facts. In an effort to do so, Hart argues that the application of the 2013 version of section 727.1 in her case violates two provisions of the Oklahoma Constitution: Article 5, § 46 prohibiting special laws and Article 2 § 15 prohibiting ex post facto laws.

## II. The Special Law Argument

■ ¶ 10 Article 5, § 46 of the Oklahoma Constitution provides, in relevant part: "The Legislature shall not ... pass any local or special law ... Regulating the practice or jurisdiction of ... judicial proceedings or inquiry before the courts ... or providing or changing ... the enforcement of judgments ... [or] Fixing the rate of interest...." Hart concedes that the 2013 version of section 727.1 is not "squarely unconstitutional under Article 5, § 46." However, she argues that "strict application" of the statute improperly changes the enforcement of judgments and the fixing of interest rates.

¶ 11 First, Hart contends that the 2009 version of section 727.1, subsequently declared unconstitutional, was intended to apply prospectively because it only applied to cases filed after January 1, 2010. She concludes, however, that the 2013 version applies retroactively because it was also made applicable to cases filed after January 1, 2010.

The *Douglas* decision, she also argues, prevented uniform application of the statute by creating two special classes of judgment holders, those who received the 2009 prejudgment interest rate but may be entitled to the 2004 rate, and those who were paid the 2004 rate on judgments entered between the *Douglas* decision and November 1, 2013, but may be entitled to the 2009 rate as a result of the 2013 amendment.

■ ¶ 12 Although Hart points out that it is hypothetically possible for there to be some cases in which one of the parties might claim a refund or additional interest, she has not included in the record any case in which that is an issue. More importantly, that is not the circumstance applicable to Hart's case. Hart's suit may have been filed in October of 2011 before *Douglas* was decided, but the verdict in Hart's case was accepted on June 18, 2014, after the current version of section 727.1 became effective and during neither of the times involving the two hypothetical "classes" Hart has described. "We do not sit to decide hypothetical issues or to give advisory opinions about issues not yet in controversy." *Underside v. Lathrop*, 1982 OK 57, ¶ 9, 645 P.2d 514. Consequently, we do not address this argument.

■ ¶ 13 Second, Hart argues that the combination of the *Douglas* decision and the 2013 amendment created three discriminatory classes: (1) those whose verdicts were accepted after the 2009 amendment but before the *Douglas* decision and were subject to the lower 2009 rate; (2) those whose verdicts were accepted after *Douglas* but before the 2013 amendment and were subject to the higher 2004 rate; and (3) those whose verdicts were accepted after the 2013 amendment and are subject to the current rate. She contends that these classes are all part of the same class: plaintiffs entitled to prejudgment interest. According to Hart, the "infirmity lies in the fact that all of these classes ... [were] subject to severe and varying degrees in the *amount* of prejudgment interest available." The creation of new "classes" as a result of a change in the law does not inherently result in a violation of Article 5, § 46. As long as the new law "operates equally upon all the subjects within the class for which it was adopted" it is not a "special law." *Grimes v. Oklahoma City*, 2002 OK 47, ¶ 10, 49 P.3d 719 (citing *Anderson v. Walker*, 1958 OK 297, 333 P.2d 570).

■ ¶ 14 It is true that those whose verdicts were accepted during the three periods Hart identifies received different rates of prejudgment interest. However, a "classification is not to be measured by whether it discriminates, but rather by whether it discriminates impermissibly or invidiously." *Ross v. Peters*, 1993 OK 8, ¶ 20, 846 P.2d 1107 (discussing Oklahoma's "functional equivalent" to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution). There is no constitutional infirmity "if the statute applies alike or in reasonable degree to all parties in the same class." *Daube v. Okla. Tax Comm'n*, 1944 OK 218, ¶ 29, 194 Okla. 487, 152 P.2d 687. Although judgment holders received different amounts of prejudgment interest depending on the version of section 727.1 in effect at the time the verdict was accepted, Hart has shown no disparity regarding the amount of prejudgment interest received by those whose judgments were subject to the same version of the statute.

¶ 15 For the reasons discussed in Part I of this Opinion, Oklahoma law clearly recognizes the power of the Legislature to establish the entitlement to and amount of prejudgment interest and to change that amount from time to time without unconstitutionally discriminating among those entitled to prejudgment interest at any particular time. Application of the 2013 version of section 727.1 in this case does not violate Article 5, § 46 of the Oklahoma Constitution.

### III. The Ex Post Facto Argument

■ ¶ 16 Hart's final argument relies on Article 2, § 15 of the Oklahoma Constitution prohibiting ex post facto laws. Hart concedes that this prohibition normally applies only in the criminal law context. As Hart correctly notes, an ex post facto law is one that "inflicts a greater punishment than the law annexed to the crime at [the] time it was committed or alters [the] situation of accused to his disadvantage." *Spitznas v. State*, 1982

OK CR 115, ¶ 16, 648 P.2d 1271 (citation omitted). However, Hart does not explain what "crime" is at issue in this case. Nonetheless, she argues that she had a vested right to the prejudgment interest rate in effect on the date her suit was filed.

¶ 17 Vested or accrued rights "become absolute and, by Art. 5 § 54, Okl. Const., are constitutionally shielded from legislative invasion." *Messenger v. Messenger*, 1992 OK 27, ¶ 13, 827 P.2d 865 (footnotes omitted). An accrued right includes a "matured cause of action or some legal authority to demand redress." *In re Bomgardner*, 1985 OK 59, n.22, 711 P.2d 92 (citing *Mid-Continent Casualty Co. v. P & H Supply, Inc.*, 1971 OK 135, 490 P.2d 1358). Once accrued, the substance of a claim cannot be changed. *See Thomas v. Cumberland Operating Co.*, 1977 OK 164, ¶ 6, 569 P.2d 974 (noting that statutes imposing, removing or changing a monetary limitation on recovery for personal injuries are generally applied prospectively). And, once adjudicated, the judgment on a particular claim can neither be destroyed nor altered by "after-enacted legislation." *Timmons v. Royal Globe Ins. Co.*, 1985 OK 76, ¶ 13, 713 P.2d 589 (applying the post-judgment interest rate in effect when the judgment was rendered despite subsequent legislative changes to that rate).

¶ 18 We agree that a vested right cannot be constitutionally divested by retroactive application of a new law. However, the generally recognized exception to that rule holds that procedural statutes can be applied retroactively. "Remedial or procedural statutes which do not create, enlarge, diminish, or destroy vested ... rights, and which relate only to remedies or modes of procedure are generally held to operate retroactively and to apply to pending actions or proceedings...." *Thomas*, 1977 OK 164, ¶ 4, 569 P.2d 974. "Legislation that is general in its terms and impacts only matters of procedure is presumed to be applicable to all actions, even those that are pending." *Cole v. Silverado Foods, Inc.*, 2003 OK 81, ¶ 8, 78 P.3d 542 (footnote omitted). As discussed in Part I of this Opinion, the prejudgment interest statute has been consistently interpreted by the Supreme Court as "[n]ot being of the sub-

stance of the right of action." *Benson v. Blair*, 1973 OK 102, ¶ 6, 515 P.2d 1363.

¶ 19 Further, Hart confuses the right to prejudgment interest which "vested" when her law suit was filed with the right to a particular rate or amount of prejudgment interest. The cases decided pursuant to section 727(E) clearly establish that the Legislature can change the rate or amount of prejudgment interest without affecting the substance of the claim, and that any such "procedural" change can be applied to judgments rendered after the law became effective even though the prejudgment interest statute was not adopted until after the lawsuit resulting in the judgment was filed.

> This Court has specifically held that § 727 directs assessment of interest on judgment from the time suit is commenced to the date of the verdict notwithstanding the fact that suit was commenced prior to the effective date of the act on the basis that the statute is procedural rather than substantive. Thus prejudgment interest is to be assessed at the rate provided by statute at the time of the verdict....

*Fleming v. Baptist Gen. Convention of Okla.*, 1987 OK 54, ¶ 31, 742 P.2d 1087 (citations omitted) (deciding the constitutionality of section 727). In addition, the Supreme Court has consistently applied the prejudgment interest statute retroactively without legislative intervention to change that result. "Failure of the Legislature to change the law for a long period of time after judicial construction thereof amounts to Legislative approval and ratification of the construction placed upon the statute by the Court." *Couch v. Int'l Bhd. of Teamsters, Etc.*, 1956 OK 239, ¶ 6, 302 P.2d 117 (citation omitted).

¶ 20 Without discussing the cases interpreting section 727(E), Hart finds impermissible retroactivity in the fact that the 2013 version of section 727.1 specifically declares its applicability to cases filed after January 1, 2010, and to verdicts accepted on or after November 1, 2009, a date four years before the statute was adopted. We do not find this distinction material or sufficient to

distinguish the jurisprudence interpreting section 727(E).

▪ ¶ 21 First, applying the statute, as Hart suggests, to verdicts accepted before the statute became effective would produce an absurd result. A "statutory construction which would lead to an absurdity must be avoided; rational constructions are preferred if the language fairly permits." *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, ¶ 28, 708 P.2d 1068. The language of the 2013 version of section 727.1 "fairly permits" a construction that would apply the statute only to cases filed after January 1, 2010, in which the verdict was accepted after the statute became effective on November 1, 2013. We find no language in the statute justifying a different interpretation. "[T]he cardinal rule of statutory construction is to begin with consideration of the language used and courts should not read into a statute exceptions not made by the Legislature." *Ledbetter v. Okla. Alcoholic Beverage Laws Enf't Comm'n*, 1988 OK 117, ¶ 7, 764 P.2d 172 (footnote omitted). As important, our interpretation is consistent with the constitutionally approved interpretation of section 727(E), the statute replaced by section 727.1, thereby avoiding, as we are required to do, any construction that would render the 2013 version of section 727.1 unconstitutional. *See Fent v. Okla. Capitol Improvement Auth.*, 1999 OK 64, ¶ 3, 984 P.2d 200.

¶ 22 Second, by declaring section 727.1 applicable to previously filed cases, the Legislature has done no more than the Supreme Court did with respect to section 727(E), that is, apply the prejudgment interest statute to cases filed before the statute was adopted. Like section 727, section 727.1 is a procedural statute that can be applied retroactively without offending either Article 5, § 46, or Article 2, § 15 of the Oklahoma Constitution. The verdict in Hart's case was accepted on June 18, 2014, after the current version of section 727.1 became effective. Finding no basis to distinguish the facts in Hart's case from the facts in the cases decided pursuant to section 727(E), we conclude that the 2013 version of section 727.1 is a "mode of procedure which the [district] court was bound to follow." *Benson v. Blair*, 1973 OK 102, ¶ 6, 515 P.2d 1363. The district court did so, and the result was an award to Hart of prejudgment interest in the amount of $366.67.

## CONCLUSION

¶ 23 Hart argues that the district court erred in applying the version of the prejudgment interest statute in effect when the verdict in her case was accepted. Although that statute was adopted after Hart filed this case, it is a procedural statute that may be applied to verdicts accepted after the statute's effective date. The district court followed the Legislature's direction and applied the law as it was written. The district court's December 12, 2014 Journal Entry is affirmed.

¶ 24 **AFFIRMED.**

RAPP, J., and GOODMAN, J., concur.