ANDREW v. DEPANI-SPARKES



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ANDREW v. DEPANI-SPARKES

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ANDREW v. DEPANI-SPARKES
2021 OK CIV APP 41
Case Number: 117798; Consol. w/117801
Decided: 03/31/2021
Mandate Issued: 10/27/2021
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2021 OK CIV APP 41, __ P.3d __

 

BRANDON and DANIELLE ANDREW, as Guardians of B.A., a minor child, and individually, as her parents, Plaintiffs/Appellees,
v.
ELISA DEPANI-SPARKES, D.O., Defendant,
and
MERCY HEALTH CENTER, INC., d/b/a/ Mercy Health Center, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ALETIA HAYNES TIMMONS, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART AND REMANDED

Andy J. Campbell, Nicole R. Snapp-Holloway, MAPLES, NIX & DIESSELHORST, Edmond, Oklahoma, for Plaintiffs/Appellees

Kyle N. Sweet, Curtis J. Dewberry, Brian D. Blackstock, SWEET LAW FIRM, Oklahoma City, Oklahoma, for Defendant/Appellant

STACIE L. HIXON, PRESIDING JUDGE:

¶1 Mercy Health Center, Inc. d/b/a Mercy Health Center ("Mercy") appeals the trial court's January 30, 2019 order, denying its motion to vacate/motion for new trial. In its motion, Mercy raised issues pertaining to the admission and exclusion of certain evidence at trial, and we find the trial court did not abuse its discretion by denying the motion on these grounds.

¶2 Mercy's motion also alleged the trial court erred by calculating the prejudgment and post-judgment interest amounts it owed based on the 2004 version of title 12, section 727.1, instead of the 2013 version of the statute in effect at the time of the verdict. We find the 2013 version of section 727.1 applies and remand for the trial court to compute the interest amounts in accordance therewith.

BACKGROUND

¶3 On October 30, 2009, Brandon Andrew and Danielle Andrew ("the Andrews") filed suit on behalf of their minor child, B.A., and individually as her parents, against Mercy and Dr. Elisa Depani-Sparkes (collectively, "Defendants").[1] They alleged that Dr. Depani-Sparkes was negligent relating to the prenatal care and birth of their child in 2007, resulting in a permanent injury to her brachial plexus nerves, which run from the side of the neck into the shoulder. The Andrews alleged that Mercy's nurses attempted to force B.A., who was a large baby, down the birth canal by administering too much of the drug Pitocin, resulting in increased contractions, which caused or contributed to the injury. During the time the case was pending, the parties filed various Daubert[2] motions and motions in limine, which may be discussed below if relevant to the evidentiary issues.[3]

¶4 A jury trial commenced on August 27, 2018. At the conclusion of trial on September 4, 2018, the jury entered a general verdict against Defendants in favor of the Andrews and fixed damages in the amount of $700,000.00.

¶5 The Andrews subsequently filed an "Application for Costs, Pre-judgment Interest and Final Judgment on Verdict," seeking over $420,301.37 in prejudgment interest, in addition to post-judgment interest and costs. Defendants filed a joint response raising various arguments, including that the Andrews improperly calculated the amount of prejudgment interest based on a 2004 version of the applicable pre-judgment interest statute, title 12, section 727.1. Defendants asserted that instead, the court should apply the 2013 version of the statute in effect at the time of the verdict, which would result in a prejudgment interest amount of approximately $20,374.88. A hearing was held on October 18, 2018, where the trial court held the 2004 version of the statute applied. The parties also discussed the proper method of calculating post-judgment interest at the hearing.

¶6 Subsequently, on November 7, 2018, the trial court entered a judgment against Defendants in accordance with the jury's verdict. On November 16, 2018, the trial court's order on the issue of interest and costs was filed. The court held that pursuant to the 2004 version of section 727.1, the Andrews were entitled to pre-judgment interest in the amount of $341,643.56 through October 18, 2018 and then in the amount of $124.66 per diem until the date the judgment was filed on November 7, 2018. Regarding post-judgment interest, the court found the Andrews were "entitled to post-judgment interest from the date the final Judgment is filed until the Judgment is paid at a rate of $151.78 per diem."

¶7 On November 26, 2018, nineteen days after the underlying judgment was filed and ten days after the order on interest was filed, Defendants each filed a "Motion to Vacate Court Order on Prejudgment Interest, Motion to Vacate Entry of Judgment, and Motion for New Trial." Each Defendants' motion incorporated the other's by reference. The motions raised multiple issues relating to the admission and exclusion of certain evidence at trial and to the amount of prejudgment and post-judgment interest. The Andrews filed a response, to which Defendants replied, again incorporating each other's arguments by reference.

¶8 On January 30, 2019, the trial court denied Defendants' motions.[4] On March 1, 2019, Mercy appealed the denial of its motion to vacate/new trial.[5] Mercy later filed an amended petition in error, wherein it purported to also appeal from the underlying judgment on the jury verdict.

STANDARD OF REVIEW

¶9 As a preliminary matter, we must characterize the proper scope of our review. Regardless of its title, we are required to treat Mercy's "Motion to Vacate Court Order on Prejudgment Interest, Motion to Vacate Entry of Judgment, and Motion for New Trial," as its substance dictates. See Neumann v. Arrowsmith, 2007 OK 10, ¶ 8, 164 P.3d 116.

¶10 Mercy filed its motion on November 26, 2018, more than ten but less than thirty days after the underlying judgment was filed. Thus, as to the evidentiary issues at trial, it is a motion to vacate, which did not extend the appeal time, resulting in the appeal of the underlying judgment being untimely. See 12 O.S.2011, § 990.2(B); 12 O.S.Supp.2013, § 1031.1(B); Okla. Sup. Ct. R. 1.22(e)-(f). Mercy only timely appealed from the January 30, 2019 order denying the motion.

¶11 The standard of review of a trial court's refusal to vacate a judgment is an abuse of discretion. Ferguson Enterprises, Inc. v. H. Webb Enterprises, Inc., 2000 OK 78, ¶ 5, 13 P.3d 480. An abuse of discretion occurs when the decision is based on an erroneous interpretation of the law, on factual findings that are unsupported by proof, or represents an unreasonable judgment in weighing relevant factors. Williams v. Meeker N. Dawson Nursing, LLC, 2019 OK 80, ¶ 10, 455 P.3d 908. The reviewing court does not look to the original judgment, but rather the correctness of the trial court's response to the motion to vacate. Kordis v. Kordis, 2001 OK 99, ¶ 6, 37 P.3d 866.

¶12 As for the post-trial interest issues, Mercy's motion is properly characterized as a motion for new trial because it was filed within ten days after the filing of the underlying order on interest. See 12 O.S.2011, § 990.2(A); 12 O.S.2011, § 653(A); Okla. Sup. Ct. R. 1.22(c). However, Mercy only appeals from the January 30, 2019 order denying its motion for new trial.[6]

¶13 The standard of review for the denial of a motion for new trial is also an abuse of discretion. Fox v. Mize, 2018 OK 75, ¶ 6, 428 P.3d 314. However, the interpretation of the prejudgment and post-judgment interest statute is a question of law. See Hub Partners XXVI, Ltd. v. Barnett, 2019 OK 69, ¶ 6, 453 P.3d 489. When examining the correctness of an alleged error of law, "[a]pplication of the appellate abuse-of-discretion standard for reviewing a motion for new trial" uses a de novo review. Independent School District # 52 v. Hofmeister, 2020 OK 56, ¶ 17, 473 P.3d 475. Accordingly, we give no deference to the trial court's statutory construction in determining whether an abuse of discretion occurred in denying the motion for new trial on the prejudgment and post-judgment interest issues as we have "plenary, independent, and non-deferential authority to determine whether the trial tribunal erred in its legal rulings." Hub Partners XXVI, Ltd., 2019 OK 69, at ¶ 6.

ANALYSIS

A. Evidentiary Issues at Trial.

¶14 Mercy argues the trial court erred by denying the motion to vacate based on alleged errors in admitting and excluding certain evidence at trial. For the reasons below, we find the trial court did not abuse its discretion by declining to vacate the judgment on these grounds.

1. Dr. Hall Impeachment Evidence.

¶15 Mercy alleges the trial court erred by not allowing the admission of certain evidence to impeach the Andrews' expert witness, Dr. Michael Hall. Specifically, the Andrews filed a motion in limine seeking to preclude Defendants from admitting evidence that Dr. Hall was previously charged with--and later acquitted of--perjury stemming from testimony given in an Ohio case. Mercy responded, arguing the circumstances surrounding the perjury charge were proper for impeachment because Dr. Hall admitted under oath in a different case, that he exaggerated his testimony in the Ohio case. At the hearing on the motion in limine, the trial court ruled that Defendants would not be allowed to mention at trial any circumstances surrounding the perjury charge, including Dr. Hall's admission that he exaggerated the testimony, finding the evidence was unduly prejudicial and would result in a mini-trial about the perjury case.[7]

¶16 Rulings on a motion in limine are advisory and preliminary. Badillo v. Mid Century Insurance Company, 2005 OK 48, ¶ 57 n.16, 121 P.3d 1080. A party aggrieved by a ruling on a motion in limine must raise the issue at the appropriate time during trial, "either by objecting when the challenged evidence is admitted or by making an offer of proof if the question involves excluded matter." Id. (citing Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc., 1985 OK 66, ¶ 12, 713 P.2d 572). Though at trial, the court mentioned during an unrelated discussion with the Andrews' counsel that it "already ruled" on the "alleged perjury stuff," Mercy never objected to the trial court's ruling or made the requisite offer of proof, and failed to preserve the issue. Accordingly, we find the trial court did not abuse its discretion by denying the motion to vacate based on the excluded impeachment evidence.[8]

2. Alleged Causation Testimony by Nurse Michelle Murray.

¶17 Mercy alleges the trial court erred by allowing the Andrews' nursing expert, Michelle Murray, to testify as to the cause of B.A.'s brachial plexus injury. Mercy cites several instances where it alleges the Andrews elicited improper causation testimony, but it only objected to one question where Nurse Murray was asked about the effect of a Pitocin overdose.[9] To this inquiry, Nurse Murray gave examples about the potential effects of an overdose, which did not occur in the present case, but she also said, "[i]n this case there was excessive uterine power. There's now research published that it's related to brachial plexus injury."[10] Mercy alleges that this was causation testimony admitted in contravention of the trial court's decision sustaining its Daubert motion to exclude Nurse Murray's causation testimony.

¶18 In Christian v. Gray, 2003 OK 10, ¶ 5, 65 P.3d 591, the Oklahoma Supreme Court explained that expert testimony is controlled by the applicable statutes: 12 O.S.2011, § 2702 (Testimony by Experts); 12 O.S.2011, § 2703 (Bases of Opinion Testimony by Expert); 12 O.S.2011, § 2704 (Opinion on Ultimate Issue); and 12 O.S.2011, § 2705 (Disclosure of Facts or Data Underlying Expert Opinion). The admissibility of expert testimony is also governed by the standards enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) and Kumho Tire Co., Ltd. v. Patrick Carmichael et al., 526 U.S. 137 (1999). See Christian, 2003 OK 10, at ¶ 14. In a case where "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," the court may admit the testimony of a witness "qualified as an expert by knowledge, skill, experience, training or education . . . ." 12 O.S.2011, § 2702; see also Graves v. Mazda Motor Corp., 675 F.Supp.2d 1082, 1092-93 (W.D. Okla. 2009) (explaining that under Daubert, the trial court must decide whether a particular expert has the sufficient specialized knowledge to assist the jurors in deciding the issues in the case).

¶19 On appeal, like in the Daubert proceedings below, the parties do not dispute that Nurse Murray was unqualified to testify as to the cause of B.A.'s brachial plexus injury, which may be properly characterized as "specific causation" testimony. See Nelson v. Enid Medical Associates, Inc., 2016 OK 69, ¶ 30, 376 P.3d 212. Rather, the dispute is whether the testimony constitutes such causation testimony. Again, Nurse Murray testified that "[i]n this case there was excessive uterine power" and that there was research that "it's related to brachial plexus injury." While her testimony was not the most straightforward example of specific causation testimony, it arguably was such testimony.

¶20 However, even if the trial court erred in admitting the testimony, a judgment may not be reversed or affected based on an error that does not affect the substantial rights of the adverse party. See 12 O.S.2011, § 78; see also 12 O.S.2011, § 2104 (mandating that error may not be predicated on a ruling to admit evidence unless a party's substantial right is affected); Taliaferro v. Shahsavari, 2006 OK 96, ¶ 13, 154 P.3d 1240 ("When a party is prevented from having a fair trial as a result of an error which materially affects the substantial rights of the party, a new trial is required."). Such a reversible error is one that "creates a probability of change in the outcome of the lawsuit." Taliaferro, 2006 OK 96, at ¶ 13; see also Public Service Company v. Brown, 1998 OK 121, ¶ 7, 972 P.2d 354 (quoting Montgomery v. Murray, 1970 OK 226, ¶ 20, 481 P.2d 755 ("[P]robability of a change in the outcome of a lawsuit is the test of prejudice this Court has long employed in alleged errors of practice and procedure.")).

¶21 Mercy had the burden to show the judgment should be vacated. See F.D.I.C. v. Jernigan, 1995 OK 54, ¶ 8, 901 P.2d 793; Davidson v. Gregory, 1989 OK 87, ¶ 11, 780 P.2d 679. However, in its motion to vacate it made no attempt to show the trial court how Nurse Murrary's testimony was prejudicial; therefore, it failed to meet its burden.[11] See 12 O.S.2011, §§ 78, 2104; Taliaferro, 2006 OK 96, at ¶ 13; Public Service Company, 1998 OK 121, at ¶ 7.

¶22 Even if this was not the case, a presumption of correctness attaches to every ruling made by a trial court, and as the appellant Mercy has the burden of overcoming this presumption. See State v. Torres, 2004 OK 12, ¶ 14, 87 P.3d 572. Mercy is also responsible for incorporating into the appellate record "all materials necessary to secure corrective relief from the trial court's adverse decision." In Re: Wallace Revocable Trust, 2009 OK 16, ¶ 23, 204 P.3d 80. On review, we always indulge in the presumption that a trial court's decision is correct, and '"every fact not disputed by the record must be regarded as supporting the trial court's judgment."' Hollingshead v. Elias, 2016 OK CIV APP 46, ¶ 27, 376 P.3d 936 (quoting State v. Price, 2012 OK 51, ¶ 7 n.7, 280 P.3d 943). We may not presume legal error from a silent record. Id.

¶23 Mercy makes no attempt to show this Court how the admission of the testimony was prejudicial, and it also failed to include all of the testimony and exhibits admitted at trial in the appellate record. We must presume the evidence not contained in the appellate record supported the trial court's denial of the motion to vacate. Moreover, the testimony at issue was cumulative with evidence that is contained in the record, namely Dr. Hall's testimony that the nurses' use of Pitocin contributed to the injury. See May-Li Barki, M.D., Inc. v. Liberty Bank & Trust Co., 1999 OK 87, ¶ 15, 20 P.3d 135 ("The exclusion of cumulative evidence does not constitute reversible error.").

¶24 For these reasons, we find the trial court did not abuse its discretion by denying the motion to vacate based on the admission of Nurse Murray's complained-of testimony.

3. Nurse Chez's Excluded Testimony.

¶25 Mercy further alleges the trial court erred by excluding Nurse Chez's testimony about her opinions on the Mercy nurses' compliance with the hospital's Pitocin policy.

¶26 Before trial, the Andrews filed a motion in limine, to which Mercy responded, arguing that Nurse Chez should be prohibited from offering opinions on the Mercy nurses' compliance with the hospital's Pitocin policy because such opinions were previously undisclosed. At the motion in limine hearing, the trial court generally prohibited the parties from admitting evidence not previously disclosed. Though both parties' briefs indicate that Mercy objected to the exclusion of Nurse Chez's testimony about the policy at trial, the record does not indicate that Mercy made the offer of proof required to preserve the alleged error.[12] See Badillo, 2005 OK 48, at ¶ 57 n.16. We will not assume an offer of proof was made where it is not included in the record or acknowledged by the parties' briefing. See Fuller v. Pacheco, 2001 OK CIV APP 39, ¶ 35, 21 P.3d 74 ("We will not assume facts not in the record.").

¶27 Even presuming the issue was preserved, and taking Mercy's statements in its motion to vacate at face value that Nurse Chez could have testified that the hospital's Pitocin policy did not contain a maximum dose, it still has not shown the exclusion of the evidence was prejudicial so as to require relief.

¶28 Again, Mercy failed to include all of the evidence admitted at trial in the appellate record, and we must assume that all of the evidence not in the record supported the trial court's denial of the motion to vacate. Moreover, the issue of whether the policy contained a maximum dose had no apparent bearing on the outcome of trial. Nurse Chez herself testified that it was unnecessary for her to review the policy to determine whether the nurses violated the standard of care, and the record does not show the Andrews presented evidence that the nurses exceeded a maximum dose listed in the policy.

¶29 Furthermore, the hospital's Pitocin policy was admitted into evidence and clearly did not list a maximum dose. Regardless, if Mercy was concerned that the jury was confused about whether the policy listed a maximum dose, Nurse Chez's excluded testimony was not required to clarify this fact. Mercy could have cross-examined Nurse Murray on this issue or reviewed the policy during closing arguments, but did not do so.

¶30 For these reasons, we find the trial court did not abuse its discretion by denying Mercy's motion to vacate the judgment based on the excluded testimony.

4. Admission of Evidence of Medical Expenses.

¶31 Mercy alleges the trial court erred by admitting evidence of certain medical expenses incurred by the Andrews, which were "written off" by operation of law based on an agreement with the hospital and the Oklahoma Healthcare Authority. Mercy relies on 63 O.S.2011, § 1-1708.1D and the common law, presenting questions of law reviewable de novo. See Fraternal Order of Police, Lodge 108 v. City of Ardmore, 2002 OK 19, ¶ 5, 44 P.3d 569.[13]

¶32 Section 1-1708.1D provides that in every medical liability action the court "shall admit evidence of payments of medical bills made to the injured party, unless the court makes the finding described in paragraph B of this section." (emphasis added). Mercy does not cite any authority finding that write-off amounts are inadmissible pursuant to section 1-1708.1D, and the plain language of the statute does not address write-off amounts. Accordingly, we find it inapplicable.

¶33 Mercy also argues the write-off amounts were admissible pursuant to the common law, while the Andrews assert the collateral source rule barred the admission of the evidence. Under the collateral source rule, "compensation given to the injured party from a collateral source wholly independent of the wrongdoer does not operate to lessen the damages recoverable from the person who causes the injury." Lee v. Bueno, 2016 OK 97, ¶ 42, 381 P.3d 736. Mercy cites cases from other jurisdictions finding that the written-off or adjusted amounts are not collateral sources and that the rule does not allow the recovery of medical expenses a provider is not entitled to charge. We note that other state courts have taken a variety of approaches and reached different conclusions in deciding whether to admit the full amount of medical expenses when the bills have been satisfied for lesser amounts. See Weston v. AKHappytime, LLC, 445 P.3d 1015, 1023-26. (Alaska 2019) (discussing various state court approaches to the admission of written-off or discounted medical bills). However, the Oklahoma Supreme Court has not yet resolved this issue. See Gowens v. Barstow, 2015 OK 85, ¶ 34, 364 P.3d 644 ("[W]e need not decide today whether Medicaid write-offs made in cases filed prior to 12 O.S.2011, § 3009.1 are a collateral source.").[14]

¶34 Here, we need not decide this issue because, even if it was error to admit the full amount of the medical bills, Mercy has not shown the admission of the evidence was prejudicial so as to require relief.

¶35 Again, Mercy had the burden to show the judgment should be vacated. See F.D.I.C., 1995 OK 54, at ¶ 8; Davidson, 1989 OK 87, at ¶ 11. In its motion, Mercy did not attempt to demonstrate how the complained-of evidence had a probability of changing the outcome of the lawsuit, though in one sentence of Dr. Depani-Sparkes' reply in the motion to vacate briefing, she stated the evidence resulted in an "inflated jury verdict."

¶36 Notably, the record is silent as to the amount of the write-off at issue.[15] Furthermore, in their motions to vacate, neither Defendant attempted to explain (and Mercy does not explain on appeal) how it was possible to determine that the $700,000.00 general verdict included any or all of the complained-of medical expenses, particularly where the verdict was less than the amount the Andrews requested.[16] The jury has broad discretion to determine the amount of damages. Estrada v. Port City Properties, Inc., 2011 OK 30, ¶ 35, 258 P.3d 495. Other than speculation and conjecture, there was no way for the trial court to ascertain how the jury apportioned damages. Accordingly, we find the trial court did not abuse its discretion by denying the motion to vacate based on the admission of the written-off medical expenses.

5. Cumulative Error Argument.

¶37 Mercy also asks us to consider the alleged evidentiary errors cumulatively to determine whether the cumulative effect of the alleged errors rendered the trial unfair, where no one error requires reversal. Mercy did not raise this argument to the trial court as part of its motion to vacate, and we do not consider it now. See Bivins, 1996 OK 5, at ¶ 19; Jones, 1987 OK 113, at ¶ 11.

¶38 For all the above reasons, we affirm the trial court's denial of Mercy's motion to vacate based on the admission and exclusion of certain evidence at trial.

B. Post-Trial Issues.

¶39 Mercy asserts the trial court erroneously computed the prejudgment and post-judgment interest owed to the Andrews because the court used the 2004 version of section 727.1, rather than the 2013 version of the statute in effect at the time of the verdict, to calculate the interest. We agree and find that the 2013 version of section 727.1 applies to this case.

1. Prejudgment Interest.

¶40 As background, title 12, sections 727 and 727.1 dictate the interest on judgments in Oklahoma. When the petition was filed in this case, the 2004 versions of the statutes were in effect. Section 727 governed the computation of prejudgment interest for all actions filed on or after January 1, 2000, but before January 1, 2005. See 12 O.S.Supp.2004, § 727(K). Section 727.1 governed the computation of prejudgment interest for all actions filed on or after January 1, 2005. See 12 O.S.Supp.2004, § 727.1(K). Under the 2004 version of section 727.1, prejudgment interest was computed using the prime interest rate plus two percent. See id. at § 727.1(I).

¶41 Two days after the petition was filed, the 2009 version of section 727.1 went into effect, reducing the prejudgment interest rate to the United States Treasury Bill ("Treasury Bill") rate and providing that no prejudgment interest would start accruing until twenty-four months after the suit commenced. See 12 O.S.Supp.2009, §§ 727.1(E), (I). Section 727 was not amended.

¶42 On June 4, 2013, the Oklahoma Supreme Court held that the Comprehensive Lawsuit Reform Act of 2009, which included section 727.1, was unconstitutional because it violated the single-subject requirement of the State Constitution. See Douglas v. Cox Retirement Properties, Inc., 2013 OK 37, ¶ 12, 302 P.3d 789. Thus, Douglas effectively temporarily reinstated the 2004 version of section 727.1. See Ethics Comm'n of State of Okl. v. Cullison, 1993 OK 37, ¶ 29, 850 P.2d 1069 ("When an unconstitutional statute repeals a former statute the earlier statute is deemed unaffected by the void repealing enactment.").

¶43 A few months later, in response to Douglas, the Legislature amended section 727.1, to provide for the same prejudgment interest rate and calculation period as the 2009 version of the statute. This 2013 version became effective on November 1, 2013, and was in effect at the time the verdict was accepted in the present case in 2018.[17]

¶44 Later, in Hart v. Warner, 2017 OK CIV APP 29, 395 P.3d 861, the Court considered the constitutionality of the 2013 version of section 727.1, as applied to a case filed in 2011, before the effective date of the statute on November 1, 2013. To reach its decision, the Court addressed whether the 2004 version in effect (due to Douglas) when the appellant's suit was filed or the 2013 version in effect at the time of the verdict in 2014 applied. Id. at ¶¶ 1-2. The Court found that the 2013 version applied. Id. at ¶ 22.

¶45 Relying on multiple Supreme Court decisions interpreting section 727, Hart explained that "prejudgment interest is assessed at the statutory rate in effect when a verdict is accepted." Id. at ¶¶ 7-9 (discussing Fleming v. Baptist General Convention of Oklahoma, 1987 OK 54, 742 P.2d 1087; Fields v. Volkswagen of America, Inc., 1976 OK 106, 555 P.2d 48; and Benson v. Blair, 1973 OK 102, 515 P.2d 1363). The Court also explained that Oklahoma law has "consistently recognized that the application of prejudgment interest statutes to cases filed before the statute was adopted is constitutional as long as the effective date of the statute predated the acceptance of the verdict." Id. at ¶ 8. Ultimately, Hart found that section 727.1 is a procedural statute that can be applied retroactively without offending certain provisions of the Oklahoma Constitution. Id. at ¶ 22. Thus, in accordance with the persuasive authority of Hart and the Supreme Court cases relied upon therein, we find the 2013 version of section 727.1 applies to the present case where the verdict was rendered in 2018, after the effective date of the statute.

¶46 The Andrews, however, argue that the 2013 version is inapplicable by its own terms, based on an alleged conflict between subsections (E) and (K) of the statute, and that the 2004 version remains in effect as to this case, resulting in a substantially higher amount of prejudgment interest. Accordingly, we must interpret the meaning of the 2013 version of section 727.1.

¶47 The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language. Odom v. Penske Truck Leasing Co., 2018 OK 23, ¶ 17, 415 P.3d 521. It is presumed that the Legislature has expressed its intent in a statute's language and that it intended what it so expressed. Id. Only where legislative intent cannot be ascertained from the language of a statute, as in cases of ambiguity, are rules of statutory interpretation employed. Id. at ¶ 18. The test for ambiguity is whether the statutory language is susceptible to more than one reasonable interpretation. Id. Where a statute is ambiguous, or the meaning uncertain, "it is to be given a reasonable construction, one that will avoid absurd consequences if this can be done without violating legislative intent." Id. The legislative intent will be ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each. Id.

¶48 We begin our analysis by examining the text of the 2013 version of the statute. Section 727.1, subsection (E), states in pertinent part:

[B]eginning November 1, 2009, if a verdict for damages by reason of personal injuries or injury to personal rights . . . is accepted by the trial court, the court in rendering judgment shall add interest on the verdict at a rate prescribed pursuant to subsection I of this section from the date which is twenty-four (24) months after the suit resulting in the judgment was commenced to the earlier of the date the verdict is accepted by the trial court as expressly stated in the judgment, or the date the judgment is filed with the court clerk. No prejudgment interest shall begin to accrue until twenty-four (24) months after the suit resulting in the judgment was commenced. The interest rate for computation of prejudgment interest shall begin with the rate prescribed by subsection I of this section which is in effect for the calendar year which is twenty-four (24) months after the suit resulting in the judgment was commenced. This rate shall be in effect until the end of the calendar year in which interest begins to accrue or until the date judgment is filed, whichever first occurs. Beginning on January 1 of the next succeeding calendar year until the end of that calendar year, or until the date the judgment is filed, whichever first occurs, and for each succeeding calendar year thereafter, the prejudgment interest rate shall be the rate in effect for judgments rendered during each calendar year as certified by the Administrative Director of the Courts pursuant to subsection I of this section.

(emphasis added).

¶49 Subsection (I) states in pertinent part:

For purposes of computing prejudgment interest as authorized by this section, interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year.

(emphasis added).

¶50 Subsection K provides:

For purposes of computing prejudgment interest, the provisions of this section shall be applicable to all actions which are filed in the district courts on or after January 1, 2010, for which an award of prejudgment interest is authorized by the provisions of this section.

¶51 We do not find a conflict between subsections (E) and (K). Subsections (E) and (I) make it clear that beginning on November 1, 2009, after accepting a verdict, a trial court is required to use the Treasury Bill rate when computing the amount of prejudgment interest. Moreover, subsection (E) is clear that beginning on November 1, 2009, no prejudgment interest shall start to accrue until twenty-four months after the suit was commenced. Subsection (K) merely states that the provisions of the section are applicable to cases filed on or after January 1, 2010. Nowhere does subsection (K) state that the statute only applies to cases filed on or after January 1, 2010.

¶52 Reading subsections (E), (I), and (K) together, we find the Legislature's intent was to require trial courts to use the Treasury Bill rate and new calculation period to compute prejudgment interest in all cases where a verdict was accepted on or after November 1, 2009 and to all cases commenced on or after January 1, 2010. In other words, the language demonstrates that the Legislature intended for the statute to apply retroactively to all pending cases where a verdict had yet to be accepted. Thus, we find that based on the plain language of the statute, the 2013 version of section 727.1 applies to the present case because the verdict was accepted in 2018. This interpretation is consistent with the prejudgment interest rates listed in the Notice Re: Interest on Judgments, which as contemplated by the statute, is published annually by the Administrative Director of the Courts.

¶53 Our interpretation also gives full force and effect to both the "[b]eginning November 1, 2009 . . ." language in subsection (E) and the language in subsection (K). To find that subsection (K) overrides subsection (E), would mean that the date in subsection (E) has no effect. Logically, it is impossible for a case brought to a verdict on or after November 1, 2009 to not have been filed until a later date, i.e., on or after January 1, 2010. Stated differently, holding that the 2013 version of section 727.1 is inapplicable to a verdict accepted after the November 1, 2009 date in subsection (E), based solely on the language in subsection (K), would require us to totally ignore the language in subsection (E). Such interpretation fails to consider the relevant portions of the statute together "to give full force and effect to each." Odam, 2018 OK 23, at ¶ 18.

¶54 We recognize that all cases filed on or after January 1, 2010 will necessarily have post-November 2009 verdicts, which makes the language in subsection (K) somewhat redundant with that in subsection (E). If anything, this redundancy stresses the Legislature's intent to apply the new interest rate and calculation period to all pending cases not yet brought to a verdict and to all cases yet to be commenced. Moreover, we find it preferable to interpret the provisions as somewhat overlapping in a way that emphasizes legislative intent rather than render one provision totally ineffectual.

¶55 Our interpretation also avoids the absurd result of there being a five-year period during which the statutes provide no way of computing prejudgment interest. Again, section 727 states it is "applicable to all actions which are filed in the district courts on or after January 1, 2000, but before January 1, 2005, . . . ." If we disregarded the language in subsection (E) and interpreted section 727.1 as only being applicable to "all actions which are filed in the district courts on or after January 1, 2010, . . . ." then there would be no statutory way to calculate prejudgment interest for any cases filed during the five-year period from January 2, 2005 until January 1, 2010. Our interpretation avoids this absurd consequence, which we do not find was intended by the Legislature.[18]

¶56 Furthermore, when there are two possible interpretations of a statute, one of which would render the legislation unconstitutional, the construction must be applied which renders it constitutional. Shadid v. City of Oklahoma City, 2019 OK 65, ¶ 7, 451 P.3d 161. Finding that section 727.1 only applies to cases filed on or after January 1, 2010 would result in no right to prejudgment interest in cases filed during the five-year period at issue. See Sisney v. Smalley, 1984 OK 70, ¶ 8, 690 P.2d 1048 (explaining recovery of interest must be based on statute as there is no common law right to interest on a judgment). As the parties agree, the Andrews' right to prejudgment interest (though not to a specific rate) vested upon the filing of the petition in 2009, and vested rights are constitutionally shielded from legislative invasion. See Hart, 2017 OK CIV APP 29, ¶¶ 17-19. Thus, to find section 727.1 inapplicable to the present case would have the unconstitutional result of the Andrews being divested of their right to interest.

¶57 In an attempt to combat this issue, the Andrews argue that the 2013 version of section 727.1 did not actually repeal the 2004 version, so that the 2004 version remained applicable to cases filed during the five-year period. We have found no authority recognizing that the Legislature may intend for a statutory amendment, which retroactively applies to pending cases, to apply to some cases but leave the prior version of the statute in effect to apply to others.[19]

¶58 The Supreme Court recognizes that by amending a statute, the Legislature may have intended either: 1) to change existing law, or 2) to clarify ambiguous law. Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 13, 33 P.3d 302. Simply, an amendment to a statute usually indicates an intention to change its meaning. Kuykendall v. Department of Public Safety, 1975 OK 175, ¶ 9, 544 P.2d 516. An amendment that materially changes the language of the statute indicates the Legislature intended to effect a change in the law. Equitable Royalty Corporation v. State, 1960 OK 20, ¶ 18, 352 P.2d 365. Obviously, the 2013 version of the statute materially changed the 2004 statute, indicating the Legislature intended to change the law rather than to leave the 2004 version of the statute in effect, especially where the text of the later enacted statute contemplates it will be applied to pending cases where a verdict has yet to be accepted.

¶59 For these reasons, we find the trial court erroneously applied the 2004 version of section 727.1, rather than the 2013 version, when calculating the amount of prejudgment interest owed to the Andrews and abused its discretion by denying Mercy's motion for new trial on this basis. Accordingly, we reverse the trial court's order denying the motion for new trial as to the prejudgment interest issue and remand for further proceedings. Upon remand, the trial court shall calculate the amount of prejudgment interest owed to the Andrews in accordance with the 2013 version of title 12, section 727.1.

2. Post-Judgment Interest.

¶60 Last, Mercy asserts the trial court abused its discretion by refusing to grant its motion for new trial because the court erred by using the 2004 version of section 727.1 to calculate the post-judgment interest amount, rather than the 2013 version. It is unclear if there is a dispute between the parties about the proper rate used to compute post-judgment interest.[20] Though the 2013 version of the statute clearly applies, both versions require the same post-judgment rate for all judgments rendered on or after January 1, 2005: the prime rate plus two percent. Compare 12 O.S.Supp.2013, §§ 727.1(I)-(J) with 12 O.S.Supp.2004, §§ 727.1(I)-(J).

¶61 However, the trial court's Order on interest simply states that the Andrews are entitled to "post-judgment interest from the date the final Judgment is filed until the Judgment is paid at a rate of $151.78 per diem." Thus, it is unclear what rate was used to calculate this per diem amount. The set per diem rate also fails to reflect that the post-judgment interest rate is subject to change based on the calendar year, depending on when the judgment is paid. See 12 O.S.Supp.2013, § 727.1(C).

¶62 In any event, the trial court's denial of the motion for new trial must be vacated because the amount of prejudgment interest, which was improperly computed, is part of the post-judgment interest calculation. See id. Upon remand, the trial court shall calculate the amount of post-judgment interest in accordance with the 2013 version of title 12, section 727.1.

CONCLUSION

¶63 We affirm the trial court's January 30, 2019 order to the extent the court declined to vacate the judgment on the jury's verdict based on the alleged evidentiary errors at trial. However, we reverse the order to the extent the trial court refused to grant Mercy a new trial as to the amounts of prejudgment and post-judgment interest owed to the Andrews. On remand, the trial court shall apply the 2013 version of title 12, section 727.1 to calculate the proper amounts of prejudgment and post-judgment interest owed to the Andrews in a manner consistent with this Opinion.

¶64 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

FISCHER, V.C.J., and RAPP, J., concur.

FOOTNOTES

[1] The petition refers to Danielle Andrew as Danielle Edwards and names her as the plaintiff bringing suit individually and on behalf of B.A. On April 20, 2010, an amended petition was filed also naming Brandon Andrew as a plaintiff, bringing suit individually and on behalf of B.A.

[2] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

[3] At one point, the trial court granted summary judgment in favor of Mercy, a decision the Oklahoma Supreme Court ultimately reversed in Andrew v. Depani-Sparkes, 2017 OK 42, 396 P.3d 210.

[4] Though the Journal Entry indicates that a hearing was held, a transcript of the hearing, if any was made, is not included in the appellate record.

[5] Dr. Depani-Sparkes also filed an appeal, Case No. 117,801, which she later dismissed.

[6] See Petition in Error; Amended Petition in Error.

[7] Mercy characterizes Dr. Hall's admission that he exaggerated his testimony as an admission that he "intentionally provided false testimony." We find this characterization to be inaccurate given the information provided in the motion in limine proceedings.

[8] In passing, Mercy complains that it was barred from supporting its experts' causation theory with the "Lerner article." To the extent Mercy is now attempting to raise this as an issue on appeal, no relief is required. Although the "Lerner article" was mentioned in Dr. Depani-Sparkes' motion to vacate to give context to the Dr. Hall impeachment issue, neither Defendant provided the trial court with any argument as to why the judgment should be vacated based on the exclusion of the article itself at trial. We do not consider such argument now. See Bivins v. State ex rel. Oklahoma Mem'l Hosp., 1996 OK 5, ¶ 19, 917 P.2d 456 ("An appellate court will not make first-instance determinations of disputed law or fact issues."); Jones v. Alpine Investments, Inc., 1987 OK 113, ¶ 11, 764 P.2d 513 ("Parties on appeal are limited to the issues presented at the trial level."). Moreover, the record does not show Mercy made the requisite offer of proof at trial to preserve this issue.

[9] Mercy only objected one other time during Nurse Murray's entire direct examination, and the objection was as to the alleged cumulative nature of the testimony.

[10] The complained-of testimony was arguably unresponsive to the general question asked about the effects of a Pitocin overdose, and Mercy failed to object to her answer or ask the court to strike it.

[11] Defendant Dr. Elisa Depani-Sparkes' motion to vacate also provided no argument as to how the testimony was prejudicial.

[12] Though such objection is not in the appellate record, we regard these admissions in the briefs as a supplement to the appellate record. See e.g., State ex rel. Oklahoma Bar Association v. Moon, 2013 OK 7, ¶ 39 n.42, 295 P.3d 17.

[13] After this case was commenced, the Legislature enacted 12 O.S.2011, § 3009.1, to allow the admission of only the actual amounts of medical bills paid at trial, not the amounts incurred. Both parties recognize that section 3009.1 does not apply.

[14] In Gowans, the Supreme Court did not mention 63 O.S.2011, § 1-1708.1D, further indicating the statute is inapplicable to write-off amounts as we determined above.

[15] Though Defendants filed a joint "Trial Brief and Offer of Proof" on this issue, the alleged amount by which the medical bills were "written-off" is not included therein.

[16] None of the evidence related to damages admitted at trial is included in the appellate record. We can gleam from the Andrews' closing arguments that they requested an award of $842,000.00, consisting of past and future medical bills and lost earnings, in additional to damages for pain and suffering in an amount unspecified during closing arguments.

[17] This version of the statute is also currently in effect.

[18] We note that section 727 is titled "Postjudgment Interest on Judgments Rendered Between January 1, 2000 and January 1, 2005 - Prejudgment Interest on Actions Filed Between January 1, 2000 and January 1, 2005." Section 727.1 is titled "Postjudgment Interest on Judgments Rendered After January 1, 2005 - Prejudgment Interest on Actions Filed After January 1, 2010." We recognize that legislative intent may be ascertained from the language in the title of an enactment. Thurston v. State Farm Mutual Automobile Insurance Co., 2020 OK 105, ¶ 16, 478 P.3d 415. However, the title of an act may be general and need not specify every clause in the statute. One Chicago Coin's Play Boy Marble Bd. v. State ex rel. Adams, 1949 OK 251, ¶ 12, 212 P.2d 129. We do not find the title of the statute to be dispositive, given the legislative intent expressed by the body of the statute and the absurdity that would result.

[19] The cases the Andrews cite provide no such authority. Continental Ins. Co. v. Hull, 1913 OK 275, 132 P. 657, involved the interpretation of two separate statutes, not statutory amendments. In Poafpybitty v. Skelly Oil Company, 1964 OK 162, 394 P.2d 515, the Court merely interpreted the meaning of an amended version of a statute by considering what "evils" in a prior version of a statute the Legislature sought to avoid.

[20] The Andrews provide no argument in their brief on this issue, and appeared to acknowledge to the trial court that post-judgment interest should be calculated using the prime interest rate plus two percent.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2001 OK CIV APP 39, 21 P.3d 74, 72 OBJ 1132, FULLER v. PACHECO
Discussed
 2016 OK CIV APP 46, 376 P.3d 936, HOLLINGSHEAD v. ELIAS
Discussed
 2017 OK CIV APP 29, 395 P.3d 861, HART v. WARNER
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 54, 742 P.2d 1087, 58 OBJ 1828, Fleming v. Baptist General Convention of Oklahoma
Discussed
 1987 OK 113, 764 P.2d 513, 58 OBJ 3151, Jones v. Alpine Investments, Inc.
Discussed at Length
 1989 OK 87, 780 P.2d 679, 60 OBJ 1464, Davidson v. Gregory
Discussed at Length
 1913 OK 275, 132 P. 657, 38 Okla. 307, CONTINENTAL INS. CO. v. HULL.
Discussed
 1993 OK 37, 850 P.2d 1069, 64 OBJ 978, Ethics Com'n of State of Okl. v. Cullison
Discussed
 2000 OK 78, 13 P.3d 480, 71 OBJ 2590, FERGUSON ENTERPRISES, INC. v. H. WEBB ENTERPRISES, INC.
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 2001 OK 99, 37 P.3d 866, 72 OBJ 3420, KORDIS v. KORDIS
Discussed
 1960 OK 20, 352 P.2d 365, EQUITABLE ROYALTY CORPORATION v. STATE
Discussed
 1999 OK 87, 20 P.3d 135, 70 OBJ 3149, May-Li Barki, M.D., Inc. v. Liberty Bank & Trust, Co.
Discussed
 2002 OK 19, 44 P.3d 569, 73 OBJ 903, FRATERNAL ORDER OF POLICE, LODGE 108 v. CITY OF ARDMORE
Discussed
 1964 OK 162, 394 P.2d 515, POAFPYBITTY v. SKELLY OIL COMPANY
Discussed
 1995 OK 54, 901 P.2d 793, 66 OBJ 1849, F.D.I.C. v. Jernigan
Discussed at Length
 1970 OK 226, 481 P.2d 755, MONTGOMERY v. MURRAY
Discussed
 1973 OK 102, 515 P.2d 1363, BENSON v. BLAIR
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed at Length
 2004 OK 12, 87 P.3d 572, STATE v. TORRES
Discussed
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed at Length
 2005 OK 48, 121 P.3d 1080, BADILLO v. MID CENTURY INSURANCE COMPANY
Discussed at Length
 2006 OK 96, 154 P.3d 1240, TALIAFERRO v. SHAHSAVARI
Discussed at Length
 2007 OK 10, 164 P.3d 116, NEUMANN v. ARROWSMITH
Discussed
 2009 OK 16, 204 P.3d 80, IN RE: WALLACE REVOCABLE TRUST
Discussed
 2011 OK 30, 258 P.3d 495, ESTRADA v. PORT CITY PROPERTIES, INC.
Discussed
 2012 OK 51, 280 P.3d 943, STATE v. PRICE
Discussed
 2013 OK 7, 295 P.3d 17, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOON
Discussed
 2013 OK 37, 302 P.3d 789, DOUGLAS v. COX RETIREMENT PROPERTIES, INC.
Discussed
 1975 OK 175, 544 P.2d 516, KUYKENDALL v. DEPARTMENT OF PUBLIC SAFETY
Discussed
 1976 OK 106, 555 P.2d 48, FIELDS v. VOLKSWAGEN OF AMERICA, INC.
Discussed
 2015 OK 85, 364 P.3d 644, GOWENS v. BARSTOW
Discussed
 2016 OK 69, 376 P.3d 212, NELSON v. ENID MEDICAL ASSOCIATES, INC.
Discussed
 2016 OK 97, 381 P.3d 736, LEE v. BUENO
Discussed
 2017 OK 42, 396 P.3d 210, ANDREW v. DEPANI-SPARKES
Discussed
 2018 OK 23, 415 P.3d 521, ODOM v. PENSKE TRUCK LEASING CO.
Discussed at Length
 2018 OK 75, 428 P.3d 314, FOX v. MIZE
Discussed
 2019 OK 65, 451 P.3d 161, SHADID v. CITY OF OKLAHOMA CITY
Discussed
 2019 OK 69, 453 P.3d 489, HUB PARTNERS XXVI, LTD. v. BARNETT
Discussed at Length
 2019 OK 80, 455 P.3d 908, WILLIAMS v. MEEKER NORTH DAWSON NURSING LLC
Discussed
 2020 OK 56, 473 P.3d 475, INDEPENDENT SCHOOL DISTRICT # 52 v. HOFMEISTER
Discussed
 2020 OK 105, 478 P.3d 415, THURSTON v. STATE FARM MUTUAL AUTOMOBILE INSUR. CO.
Discussed
 1949 OK 251, 212 P.2d 129, 202 Okla. 246, ONE CHICAGO COIN'S PLAY BOY MARBLE BD. v. STATE ex rel. ADAMS
Discussed
 1998 OK 121, 972 P.2d 354, 69 OBJ 4209, Public Service Company v. Brown
Discussed at Length
 1984 OK 70, 690 P.2d 1048, Sisney v. Smalley
Discussed
 1985 OK 66, 713 P.2d 572, 56 OBJ 1795, Middlebrook v. Imler, Tenny & Kugler M.D.'s, Inc.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 727, Postjudgment Interest on Judgments Rendered Between January 1, 2000 and January 1, 2005 - Prejudgment Interest on Actions Filed Between January 1, 2000 and January 1, 2005
Cited
 12 O.S. 727.1, Postjudgment Interest on Judgments Rendered After January 1, 2005 - Prejudgment Interest on Actions Filed After January 1, 2010
Discussed at Length
 12 O.S. 3009.1, Admissibility of Medical Expenses
Discussed
 12 O.S. 78, Court to Disregard Insignificant Errors
Discussed
 12 O.S. 653, Time for Filing Application for New Trial
Cited
 12 O.S. 990.2, Post-Trial Motions - Matters Taken Under Advisement - Costs, Attorney Fees, and Interest
Discussed
 12 O.S. 1031.1, Authorization to Correct, Open, Modify or Vacate Judgments - Time - Notice - Costs
Cited
 12 O.S. 2104, Rulings on Evidence
Cited
 12 O.S. 2702, Testimony by Experts
Discussed
 12 O.S. 2703, Bases of Opinion Testimony by Experts
Cited
 12 O.S. 2704, Opinion on Ultimate Issue
Cited
 12 O.S. 2705, Disclosure of Facts or Data Underlying Expert Opinion
Cited
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 1-1708, Malpractice Insurance on Doctors and Nurses in Health Departments - Liability
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA